UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

SANDY J. BATTISTA,                          )
    Plaintiff,                          )
                                            )
vs.                                         )    C.A.No.05-11456-DPW.
                                            )
KATHLEEN M. DENNEHY, Comm'r., et al.,       )
    Defendant's.                        )

## PLAINTIFF'S MOTION FOR COURT TO CALL WITNESSES AS IT'S OWN

Plaintiff, Sandy J. Battista, acting pro-se in the above cap-
tioned matter, respectfully motions the court, pursuant to 28 U.-
S.C. §1920(3) and (6); Fed.R.Evid. 614(a) and 706(b); and Fed.R.-
Civ.P. 54(d), for an Order calling witnesses as it's own, to appear
and give testimony at the evidentiary hearing on Plaintiff's pend-
ing application for preliminary injunctive relief, at such time
and place as this court so chooses and directs. In support, Plain-
tiff states:

1) That she is indigent and appearing in this matter, pro-se,
as well as confined "civilly" in the custody of the Defendant's.
And therefore, is financially unable to secure the attendance of
witnesses.

2) Defendant's, who are Department of Correction Officials,
Administrators and Employees, have unlimited financial resources
and access to securing statement from potential witnesses in this
case.

3) It has long been recognized, that "witnesses...are the
property of neither the [plaintiff or defendant]. Both sides have
an equal right, and should have an equal opportunity, to inter-

-2-

view them." See, e.g., <u>Gregory vs. United States</u>, 369 F.2d 185 (D.C.Cir.1966). It has also been recognized that "one of the first things responsible counsel does in preparing a case is to seek to interview those witnesses involved in the litigation." <u>United States vs. Opager</u>, 589 F.2d 799, 804 (5th Cir.1979).

4) The court's power to call witnesses is crucial to pre-vent impairment of the fact-finding process. See <u>United States Marshal's Service vs. Means</u>, 741 F.2d 1053, 1058 (8th Cir.1984). Alternatively, the court also has the power to order Defendant's to advance a reasonable amount in subpoena and witness fees, while at the same time excusing Plaintiff from advancing her share. Id. Additionally, Fed.R.Civ.P. 54(d) gives a district court consid-erable discretionary power to impose costs, as it sees fit.

WHEREFORE, it is prayed that this court <u>ALLOWS</u> this motion, as outlined above, and issue an Order calling the attached list of witnesses to appear at such time and place, as this court so directs.

Dated: 8/5/05 .            Respectfully submitted,

                           Sandy J. Battista, #M-15930
                           Plaintiff/Pro-se
                           Mass. Treatment Center
                           30 Administration Rd.
                           Bridgewater, Mass. 02324-3230

<u>CERTIFICATE OF SERVICE</u>

I, Sandy J. Battista, Plaintiff, acting pro-se in the above captioned matter, on oath, hereby certify's that I have today mailed a true and accurate copy of the within document on each counsel of record for the defendant's, via first class mail, postage prepaid, by hand/mail.

Dated: 8/5/05 .

                           Sandy J. Battista, #M-15930
                           Plaintiff/Pro-se

-3-

**Witness One:** Janna Douglas, M.A.

**Expected Testimony:** That she is Plaintiff's current treating therapist, as well as a scientific explanation of the clinical proprieties of [Cognitive Behavioral Modification Therapy] and how Plaintiff's gender issues are a [necessary and therapeutic component] of her treatment for her sexual offending behaviors.

**Address of Employment:** Forensic Health Services, C/O Mass. Treatment Center, 30 Administration Rd., Bridgewater, Mass. 02324-3230 — Attention Therapy Suite

**Witness Two:** Dr. J. Tyler Carpenter, Ph.D., ABPP

**Expected Testimony:** That he is the author of the report annexed to the Weiner Affidavit as (Attachment 3), as well as whether Plaintiff "currently" still exhibits any of the mental deficits in said report. Additionally, in accordance with the Fenway Clinic's treatment recommendations, Defendant's have required of him to attend seminars at the Fenway Clinic to receive training on how to counsel the Plaintiff, as well as her current mental state in being denied her prescribed treatment.

**Address of Employment:** UMass. Correctional Mental Health Program, C/O Mass. Treatment Center, 30 Administration Rd., Bridgewater, Mass. 02324-3230 — Attention Health Services Unit

**Witness Three:** Dr. Bauermiester, PhD., MD.

**Expected Testimony:** That he is the treating medical psychiatrist that prescribed antidepressants for Plaintiff due to the severe anxiety she experiences daily in being denied her prescribed treatment. And that, prior to Defendants withholding her prescribed treatment, Plaintiff was a productive goal orientated person.

**Address of Employment:** Umass. Correctional Mental Health Program, C/O Mass. Treatment Center, 30 Administration Rd., Bridgewater, Mass. 02324-3230

**Witness Four:** Maryanne Percuoco, Health Services Administrator

**Expected Testimony:** That she is the writer of the correspondence annexed to Plaintiff's REPLY as (Attachment 3), as well as confirming that the Fenway Clinic's treatment recommendations have been [prescribed]. Additionally, that she is the current Administrator of the Treatment Center's health services unit and has previously approved Fenway Clinic's treatment recommendations, as well instructing the in-house physician (Dr. Friedman) to fill said prescription.

**Address of Employment:** UMass. Correctional Health Program, C/O Mass. Treatment Center, 30 Administration Rd., Bridgewater, Mass. )2324-3230

**Witness Five and Six:** Kevin Kaplia, MD and Randi Kaufman, PsyD

**Expected Testimony:** That they both are the gender experts who evaluated and recommended the treatment plan to address Plaintiff's gender issues in the

-4-

「Fenway Report」], as well as their training and experience in evaluating and treating persons with gender issues, the methods they employed in evaluating the Plaintiff and information/documents considered in their decision-making process. Additionally, as to whether, specifically they were aware of and reviewed the reports annexed to the Weiner Affidavit as (Attachments 1 - 4), as well as whether they considered Plaintiff's Congenital Adrenal Hyperplasia medical conditions, and if yes, how it is, if at all, connected to her gender issues.

Address of Employment: Fenway Community Health Clinic, 7 Haviland Street, Boston, Mass. 02115-2683 — Telephone: (617) 927-6200 — Fax: (617) 267-3667


Witness Seven: Diane Ellabern, LICSW

Expected Testimony: That she a internationally recognized gender expert, as well as an appointed member to the Ethics Committee for the Harry Benjamin International Gender Dysphoria Association. That she is most familiar with the Plaintiff and her background, by way of reviewing her whole clinical files, medical and mental files, and Department of Correction Six Part Folder for over 12 hours, interviewed and evaluated Plaintiff for over 4 hours, spoke with Plaintiff's family, as well as sat in and participated as a witness at and during her civil commitment proceedings. That in 2001, she diagnosed Plaintiff as meeting the clinical diagnostic criteria for 「Gender Identity Disorder (NOS)," and recommended that she be placed on female hormones and surgically castrated. That the 「treatment」 was two-fold: it would help resolve Plaintiff's persistent gender dysphoria, as well as lower her risk of re-offending sexually. *

Address of Employment: 152 Edmands Road, Framingham, Mass. 01701 — Phone: (508) 788-5406 — Fax: (508) 788-7761


Witness Eight: Kathleen M. Dennehy, Commissioner of Corrections

Expected Testimony: That she is the current Commissioner for the Department of Corrections, as well as a Defendant named in the enclosed matter. Additionally, that she was a witness for the defense in the Kosilek case. And therefore, is personally familiar with that case, this Court's (Wolf, J.) decision, as well as going on record publicly of not agreeing with that decision, and personally does not feel that Plaintiff's gender disorder is a "medically necessary disorder" requiring medical treatment. **

Address of Employment: Department of Correction, Commissioner's Office, 50 Maple Street, Suite 3, Milford, Mass. 01757-3698

-----------------------------------------------

* In lieu of Diane Ellabern's testimony, Plaintiff is open to excepting the attached Gender Evaluation and Resume as evidence to that testimony.

** In lieu of Commissioner's Dennehy's testimony, plaintiff is open to accepting the transcripts of a previous segment where Commissioner Dennehy went on public record as personally feeling that gender disorders are not medically necessary and does not agree with this Court's (Wolf, J) decision in the Kosilek case, annexed to Plaintiff's REPLY as (Attachment5) as evidence to that testimony.

# DIANE ELLABORN, LICSW

152 Edmands Road
Framingham, MA 01701

Phone 508-788-5406
Fax   508-788-7761

## Gender Evaluation

October 17, 2001

Re:   Sandy J. Battista aka David Megarry

Attorney Christopher P. LoConto has requested this gender specialist evaluate whether Sandy Jo Battista has a Gender Identity Disorder, if he does, to clarify the nature and treatment of this condition and the possible implications for him if he undergoes treatment.

By way of introduction, I am a licensed clinical social worker in full time private practice. I have practiced for 22 years after obtaining my Masters in Social Work degree. I am a NASW Diplomate in Clinical Social Work. I have completed specialized training to become a Gender Specialist and primarily evaluate and treat patients with gender conditions. I am a member of the Harry Benjamin International Gender Dysphoria Association as well as an appointed member to the association's Ethics Committee. I am an elected board member and clinical consultant to the International Foundation of Gender Education. I have lectured internationally on the subject of gender conditions and trained professionals about the evaluation and treatment of gender dysphoria. I follow the Harry Benjamin International Gender Dysphoria Association's Standards of Care for the diagnosis and treatment of persons with gender dysphoria.

This association outlines the task of a Gender Specialists as:

Mental health professionals (MHP) who work with individuals with gender identity disorders may be regularly called upon to carry out many of these responsibilities:

1. to accurately diagnose the individual's gender disorder;
2. to accurately diagnose any co-morbid psychiatric conditions and see to their appropriate treatment;
3. to counsel the individual about the range of treatment options and their implications;
4. to engage in psychotherapy;
5. to ascertain eligibility and readiness for hormone and surgical therapy;
6. to make formal recommendations to medical and surgical colleagues;

7.    to document their patient's relevant history in a letter of
      recommendation;
8.    to be a colleague on a team of professionals with interest
      in the gender identity disorders;
9.    to educate family members, employers, and institutions
      about gender identity disorders;
10.   to be available for follow-up of previously seen gender patients.

During this evaluation I have reviewed Sandy Jo Battista's record for 12 hours, interviewed and evaluated Sandy Jo Battista in person for 4 hours and administered two diagnostic tests, interviewed on telephone, Deborah Johnson, Sandy Jo Battista's sister, contacted by telephone his endocrinologist Dr. Maria Warth and consulted with a pediatric endocrinologist about the medical/genetic condition he was born with: Congenital Adrenal 12 Hyperplasia which is considered an intersex condition.

The following is an overview of psychosocial history. I will not outline this history in detail since it is well documented in the record and by previous evaluations. I will, however, focus on Sandy Jo Battista's gender history, which is pertinent to this evaluation.

Sandy Jo Battista was born the middle of three children. He was born with a genetic disorder Congenital Adrenal 12 Hyperplasia , which results in an increased secretion from the adrenal gland of cortisol steroids and androgens. It is reported that Sandy's mother was rejecting toward him due to this condition and therefore his maternal grandmother cared for him as a baby. The home environment was described as physically violent which eventually culminated in the accidental death of his mother. It is unclear how old Sandy was at the time of this event but estimated between the age of 4-8. Abusive punishment was also described in this home environment.  After the death of Sandy's mother, his father was incarcerated for involuntary manslaughter and Sandy was placed in care with his maternal grandparents who were allegedly physically and possible sexually abusive and neglectful. His placement was subsequently changed to his paternal grandparents. His father was also in this environment after he was released from prison. The record suggests this environment may also have been physically abusive. Sandy's father relinquished his custody and he was placed in a series of foster homes. Sandy has a history of breaking and entering charges and molestation of females.

He was placed at age 15 in a DYS secure facility. Previous placements include Metropolitan State Hospital and Medfield State Hospital. He is currently at Bridgewater Treatment Center. He has completed a twelve to twenty year sentence for rape of a child on May 29, 2001. Sandy Jo Battista is awaiting a probably cause hearing to determine whether he currently meets the criteria for a sexually dangerous person.

Sandy Jo Battista has a long history of cross gender identification and expression dating back to early latency ages 5-7 years old. Crossdressing is reported in his sister's

clothing, sleeping in her pajamas, wearing his sister's underwear under male clothing. No sexual arousal is reported in these early crossdressing experiences. It also is reported that Sandy Jo exhibited crossgender play as evidenced by playing with his sister's dolls and toys. He preferred playing with his sister or alone rather than with his same sex sibling or peers.

It is apparent from Sandy's history that this persistent gender condition continued to be expressed throughout his incarceration and has been longstanding. Examples of adult crossgender identification include: history of name change to a female name (1995), crossdressing throughout his incarceration in female underpants (until this practice was disallowed), wearing of neutral or androgynous women's outer garments, use of pens and art pastels as eye makeup, attempts to harm testicles through tying testicles with rubber bands, freezing testicles with cups of ice and sticking sewing needles in testicles. It also is reported that he once offered a roommate money if he cut off his testicles (this did not occur). Sandy also reported a long history of the use of female hygiene products, shaving legs, chest, arms and underarms, plucking eyebrows and sitting while urinating. As mentioned I also administered two diagnostic tests to verify Sandy's diagnosis. Although there is no definitive psychological or medical test to verify Gender Identity Disorder, there are two tests that this evaluator uses as part of a gender evaluation. The results of the first test "A Cross-Gender Questionnaire" by Richard E. Docter, Ph.D. and James S. Fleming, Ph.D., reflects a transsexual rather than transvestite identity and no arousal linked with this identity. The second test "The Cogiati" by Jennifer Reitz, results reflect Sandy falls into the category of four, "probable transsexual" described as "your score places you among the majority of those diagnosed transsexuals, the "late onset" transsexual."

This early history of childhood crossdressing without sexual arousal, crossgender play and crossgender preference, along with adult evidence of gender condition, coupled with body dysphoria is evidence that Sandy Jo Battista meets the criteria for Gender Identity Disorder formerly called Transsexualism. The criteria for this diagnosis includes:

A.    A strong and persistent cross-gender, identification (not merely a desire for any perceived cultural advantages of being the other sex).

In children, the disturbance is manifested by four (or more) of the following:

(1)    repeatedly stated desire to be, or insistence that he or she is, the other sex
(2)    in boys, preference for crossdressing or simulating female attire, in girls, insistence on wearing only stereotypical masculine clothing
(3)    strong and persistent preferences for cross-sex roles in make-believe play or persistent fantasies of being the other sex

(4)     intense desire to participate in the stereotypical games
        and pastimes of the other sex
(5)     strong preference for playmates of the other sex

In adolescents and adults, the disturbance is manifested by symptoms such as a stated desire to be the other sex, frequent passing as the other sex, desire to live or be treated as the other sex, or the conviction that he or she has the typical feelings and reactions of the other sex.

Persistent discomfort with his or her sex or sense of inappropriateness In the gender role of that sex.

In children, the disturbance is manifested by any of the following: in boys, assertion that his penis or testes are disgusting or will disappear or assertion that it would be better not to have a penis, or aversion toward rough-and-tumble play and rejection of make stereotypical toys, games, and activities; in girls, rejection of urinating in a sitting position, assertion that she has or will grow a penis, or assertion that she does not want to grow breasts or menstruate, or marked aversion toward normative female clothing.

In adolescents and adults, the disturbance is manifested by symptoms such as preoccupation with getting rid of primary and secondary sex characteristics (e.g. request for hormones, surgery, or other procedures to physically alter sexual characteristics to simulate the other sex) or belief that he or she was born the wrong sex.

The disturbance is not concurrent with a physical intersex condition.

The disturbance causes clinically significant distress or impairment In social, occupational, or other important areas of functioning.

Sandy Jo Battista is more accurately diagnosed with Gender Identity Disorder Not Otherwise Specified (NOS) codified in DSM IV as 302.6. This reflects he meets the criteria for Gender Identity Disorder and also has an intersex condition as noted in DSM IV, Congenital Adrenal 12 Hyperplasia and accompanying gender dysphoria.

It is my professional opinion that Sandy Jo Battista meets the criteria for Gender Identity Disorder NOS. In terms of differential diagnosis he does not meet criteria for Transvestic Fetishism since historically and currently there is no sexual arousal linked with his crossgender identification or expression and there is significant body dysphoria along with the expressed desire to take progressive steps to become fully female. He also does not meet criteria for malingering since crossgender identification and behavior date back to early childhood and did not begin during incarceration.

Gender Identity is the internal understanding and psychological expression of being male or female. In most people this internal sense of self and outward expression match ones anatomy. When a person has a gender identity disorder they are opposite. Gender identity and sexual identity including sexual attraction, orientation, arousal and/or expression are separate identities. In Sandy Jo Battista's case her history of sexual offending appears to have nothing to do with her gender identity. People with gender identity disorder do not generally have deviant sexual arousal and/or expression and if they do it is rarely linked to their gender identity. In this case there is no sexual arousal linked to Sandy Jo Battista's gender identity and expression.

Gender Identity Disorder NOS is a recognized disorder codified in DSM IV as 302.6 with well recognized treatment involving psychotherapy, endocrinology and surgery. There is increasing persuasive evidence that this is a medical condition and is biological as reflected in recent brain research. Furthermore, Sandy has an intersex condition that can exacerbate gender dysphoria.

Sandy was diagnosed after birth with Congenital Adrenal Hyperplasia. According to reports there is a 21-hydroxylase deficiency. Normally the H-Y antigen is present on the cell surface of males and absent in females. In a research study by Eicher, et. al. (1979), they found a H-Y antigen deficiency in male to female transsexuals they studied. This implies there is a biological origin to Sandy's internal sense of being female that relates to his genetic intersex condition.

As noted, adult treatment of Gender Identity Disorder NOS includes psychotherapy, endocrinology and surgery. As mentioned previously The Harry Benjamin International Gender Dysphoria Association has established Standards of Care for this treatment. It is highly recommended that Sandy Jo Battista be treated psychologically by a gender specialist. He requested this treatment in 1996. Without this treatment it is this professional's opinion that she would be at high risk for depression, anxiety, suicide and self-abuse.

Also in 1996 he requested approval for crossgender hormone therapy administered by an endocrinologist. The recommended treatment is estrogen therapy and antiandrogen therapy to suppress testosterone and begin the feminization process. The secondary benefit of this treatment relevant to Sandy Jo Battista's case is that this treatment suppresses male sex drive, suppresses arousal, lowers aggressiveness and atrophies the genital area so it becomes first difficult then eventually impossible to attain and/or maintain an erection of his penis.

Sandy Jo Battista has also recently requested approval for surgery, notably elective castration (orchiectomy). This surgery is part of the sex reassignment process. In regards to his specific case the secondary benefit will be that his testosterone production will be dramatically lowered to 80% thus lowering aggression, sex drive, sexual arousal and eliminating the ability to attain and/or maintain an erection of his penis. In the motion recently filed to request elective castration it is noted that "empirical studies on the effects of castration of the sex offender, whether chemical or surgical,

have proven reasonably effective in suppressing re-offending sexual behavior including deviant sexual behaviors." These two treatments both crossgender hormone treatment and surgery are highly recommended as medical treatment for his Gender Identify Disorder.

In conclusion, Sandy Jo Battista clearly meets the criteria for Gender Identity Disorder, NOS. This condition is considered both psychological and medical in nature. This condition also appears related to his intersex condition Congenital Adrenal 12 Hyperplasia. While incarcerated he has been treated medically for his intersex condition and likewise should be allowed treatment psychologically and medically for his gender condition. The benefit of such treatment is two-fold, it will help resolve Sandy Jo Battista's persistent gender dysphoria and lower his risk of reoffending.

Diane Ellaborn, LICSW
NASW Diplomate in Clinical Social Work

# DIANE ELLABORN, LICSW

NASW Diplomate in Clinical Social Work    152 Edmands Road ✻ Framingham, MA 01701 ✻ (508) 788-5406

| | |
|---|---|
| **PRIVATE**<br>**PRACTICE**<br><br>1985 to Present | **PRIVATE PSYCHOTHERAPY PRACTICE**<br>• Individual, couple and family therapy<br>• Specialty in the evaluation and treatment of adults and youths with gender issues and their families<br>• Conduct therapy groups for transgendered individuals<br>• Divorce and family mediation<br>**CONSULTATION SERVICES**<br>• Supervise and train therapists about gender issues<br>• Consult on cases involving transgendered clients<br>• Conduct in-service training in conflict resolution skills for couples, schools and human services programs |

## EMPLOYMENT

| | |
|---|---|
| 1994 to 1996 | **BRANDON START**, Natick, MA<br>Hospital diversion program for boys (7 - 17)<br>Title: Clinician (part-time)<br>• Provided short-term, intensive individual and family counseling<br>• Performed diagnostic assessments<br>• Evaluated and treated gender-varient residents, including cross-dressing and transsexual adolescents<br>• Case management |
| 1989 to 1994 | **ADOPTIONS WITH LOVE, INC.**, Newton, MA<br>**Title: Clinical Social Worker**<br>• Provided grief counseling to birthmothers contemplating an adoption plan<br>• Coordinated housing program for birthmothers and led a support and therapeutic group for in-state birthmothers<br>• Acted as liaison with prospective adoptive couples, their social workers, attorneys and outside social service agencies<br>• Coordinated the agency's continuing education and in-service program<br>• Coordinated prenatal and postnatal care with maternity staff<br>• Performed surrenders and facilitated meetings between birthparents and adoptive couples |
| 1985 to 1989 | **BEAVERBROOK GUIDANCE CLINIC**, Waltham, MA<br>**Title: Coordinator of Day Services**<br>• Coordinator of Adolescent Day Activities Program (see below)<br>• Developed and coordinated new day services<br>• Member of Executive Director's Advisory Board<br><br>(Continued on next page) |

**Title: Coordinator of Adolescent Day Activities Program**
Hospital diversion program for disturbed adolescents who are at-risk
or have been psychiatrically hospitalized

- Administer therapeutic after-school program in Met Beaverbrook
  Area, including proposal writing, budget planning, and staff
  supervision
- Conduct therapy groups in Belmont High School for Focus and
  Resource Programs; and consult with teachers
- Conduct therapy group for dual-diagnosis (MR/ED) students in
  community setting and therapy groups in temporary adolescent shelter
- Provide individual/family counseling and case management
  for ADAP clients

**Title: Adolescent Case Manager**

- Perform major casework for 15-20 adolescents and young adults
  (ages 12-22) who have been hospitalized in psychiatric facilities or
  are at risk of psychiatric hospitalization
- Provide individual and family therapy and/or referral to outside
  practitioners
- Act as liaison to school, court system, Dept. of Social Services
  and other community service agencies
- Assess adolescents and refer to appropriate DMH services,
  including day treatment, residential programs and after-school groups
- Crisis intervention for regular caseload and on a rotating basis for
  clinic patients at large

1981 to 1985    **ROBERT F. KENNEDY ACTION CORPS**, Lancaster, MA
**Title:  Family Social Worker**

- Major case and family work for 16 adolescent boys (ages 12-18)
- Performed short-term diagnostic family assessments
- Group leader for adolescent boys' therapy group
- Supervised and trained MSW candidates and group counselors
- Individual and family counseling
- Developed treatment and discharge plans
- Acted as liaison to schools, court system, and community agencies

1979 to 1980    **CATHOLIC HOME BUREAU**, New York, NY
**Title: Senior Case Worker**

- Major casework responsibility for inner-city, minority, adolescent
  girls (ages 12-21) in residential group home setting
- Individual, group and family counseling
- Supervised and trained child care staff

**COMMUNITY**    **CHILDREN'S HEARINGS PROJECT**, Cambridge, MA
**VOLUNTEER**
**WORK**    **Title: Community Mediator, since 1981**
Mediate family/child disputes
Work with program staff to train new mediators
Member of Advisory Council

**EDUCATION**
School of Social Welfare
State University of Stony Brook, Stony Brook, NY
Degree: MSW 1979

State University College at Old Westbury, NY
Degree: BS in Women's Studies 1976

International Foundation for Gender Education, Waltham, MA
Special training to work with individuals with gender issues (1990)

**CERTIFICATION**
NASW Diplomate in Clinical Social Work  (1992)
NASW Register of Clinical Social Workers (1990)
LICSW (Massachusetts: 1983)
CSW    (New York: 1980)

**ASSOCIATIONS**
Clinical Consultant, International Foundation
for Gender Education (1997)

Harry Benjamin International Gender Dysphoria Association, Member

National Association of Social Workers, Member

**PUBLICATIONS**
"The Age of Manhood: The FtM Development in
Adolescence." Chapter in yet untitled anthology by
Dean Kotula.

Know Your Legal Rights as an Adult Home Resident
North Shore Unitarian Veatch Foundation: New York 1980

**REFERENCES**
Furnished upon request