UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SANDY JO BATTISTA,

    Plaintiff,

    v.                                                   C. A. No. 05-11456-DPW

KATHLEEN M. DENNEHY, et al.,

    Defendants.

### MOTION OF DEPARTMENT OF CORRECTION DEFENDANTS FOR SANCTIONS AGAINST PLAINTIFF FOR IMPROPER COMMUNICATIONS WITH DEFENDANTS' EXPERT WITNESS

Defendants, Kathleen M. Dennehy, Robert Murphy, Susan Martin, Steven Fairly, and Gregory Hughes, through counsel, hereby submit this motion requesting that sanctions be issued against *pro se* plaintiff, Sandy Jo Battista, in response to his improper communication with defendants' expert in gender identity disorders ("GID"), Cynthia Osborne, MSW. On October 21, 2005, plaintiff sent a letter to Ms. Osborne in a flagrant attempt to intimidate her into changing her opinion regarding his need for GID treatment. By way of sanction, defendants seek the dismissal of this action. In support of this motion, defendants state as follows:

    1.     Plaintiff, Sandy Jo Battista ("Battista"), an individual presently under civil commitment to the Massachusetts Treatment Center for Sexually Dangerous Persons ("Treatment Center") as a sexually dangerous person, pursuant to M.G.L. c. 123A, brought this action alleging that defendants have denied him treatment for his GID

    2.     Battista filed an application for a temporary restraining order or a preliminary injunction on July 6, 2005, seeking injunctive relief in the form of a court order requiring the DOC defendants to immediately provide him with medical treatment in the form of female

hormones. On July 22, 2005, the Department of Correction ("DOC") defendants filed an opposition to Battista's motion for injunctive relief. The DOC defendants' opposition included the affidavit of Lawrence Weiner, L.I.C.S.W., who outlined the current dispute among mental health professionals who have evaluated Battista over the years and reached divergent opinions as to whether Battista is properly diagnosed as suffering from GID. The Weiner affidavit stated that the DOC had retained a nationally known expert in GID, Cynthia Osborne, MSW, to review the various evaluations and diagnoses of Battista and make recommendations to the DOC.

3. On October 17, 2005 Battista filed an affidavit with the Court indicating that he had made a one inch cut on his scrotum with a razor blade, but when the wound began to bleed, he used a needle and thread to sew up the cut. Battista indicated that he had attempted to injure himself due to the delays in providing him with treatment for his GID.

4. On October 26, 2005 the DOC defendants submitted the Response of Defendants Kathleen M. Dennehy, Robert Murphy, Susan Martin, Steven Fairly, and Gregory Hughes to Plaintiff's October 17, 2005 Affidavit. Attached to the defendants' response was the second affidavit of Lawrence Weiner who set out the steps that had been recently undertaken at the Treatment Center to prevent Battista from attempting similar self-injurious behavior. Attached to Weiner's second affidavit was the recent report of Cynthia Osborne, prepared at the request of the DOC defendants. (Docket # 33). Ms. Osborne's report was very critical of earlier reports recommending GID treatment for Battista and indicated that Battista's sexual dangerousness was a contraindication for hormonal and surgical treatments. Ms. Osborne's report further stated that Battista's recent impulsive attempt as self injury supported her opinion that he is <u>not</u> appropriate for the GID treatments and that the DOC was acting responsibly in its decision to delay the hormone treatments until a more thorough assessment could be done.

3

     5.     Battista sent two unsolicited letters to Ms. Osborne at the Johns Hopkins Medical School. Ms Osborne apparently did not receive a letter dated August 17, 2005, but she did eventually receive a copy of Battista's letter dated October 21, 2005. The October 21, 2005 letter was sent to the wrong address, but eventually made it to Ms. Osborne. The October 21, 2005 letter from Battista to Ms. Osborne is a clear attempt by the plaintiff to intimidate the DOC's expert witness. (A copy of the letter and other materials sent to Ms. Osborne are attached hereto). In particular, in the fourth paragraph of the first page of Battista's letter he states that he expects Ms. Osborne to agree to change her report regarding his need for GID treatment, or he will take the following action:

> Which, if left with no other alternative, I will without question supplement my pleadings to add a claim against you for your violations of my due process rights. Additionally, as mentioned from my independent gender specialist, Ms. Diane Ellaborn, L.I.C.S.W., who is an appointed member to the Harry Benjamin International Gender Dysphoria Association's Ethics Committee, your evaluative processes will also be the subject of review. As such, I kindly request your immediate attention and position in this matter.
>
> Thank you for your consideration, review, and attention in this matter. I look forward to your reply before proceeding further in this matter.

     6.     There can be no doubt that the purpose of October 21, 2005 Battista's letter to Ms. Osborne was to intimidate the expert witness retained by the DOC, in hopes that she would change her opinion regarding his need for GID treatment. Battista's letter made clear to Ms. Osborne that if she did not change her opinion regarding his immediate need for GID treatment, he would take steps to retaliate, i.e., naming her as a defendant in the instant action, and thus requiring her to expend money in her defense of the civil action, and/or having his GID therapist, Linda Ellaborn, refer Ms. Osborne to the Harry Benjamin International Gender Dysphoria Association, international agency that publishes standards of care for treatment of GID, for an inquiry into her actions in this matter. See Kosilek v. Maloney, 221 F. Supp.2d 156, 158 (D.

Mass. 2002). While it is unclear what authority, if any, the organization may have with regard to Ms. Osborne's professional conduct related to the treatment of individuals with GID, it is clear that Battista believes that such a referral would negatively impact upon Ms. Osborne. It should also be noted that Battista tracked down Ms. Osborne at the Johns Hopkins Medical School despite the fact that Ms. Osborne's address and personal information were redacted from her report.

7. On November 7, 2005, Battista filed a motion with this court to exclude the report of Cynthia Osborne.

8. Battista's attempt to influence the potential testimony of the DOC's expert witness, Cynthia Osborne, may also constitute a violation the Victim and Witness Protection Act of 1982, 18 U.S.C.A. § 1512(a)(1). See United States v. Maggitt, 784 F.2d 590, 593-595 (5th Cir. 1986).

## CONCLUSION

For the foregoing reasons, the DOC defendants, hereby request that, in light of Battista' undisguised attempt to intimidate, threaten, and exert undue influence over the DOC's expert, Cynthia Osborne, the only appropriate sanction for such egregious and possibly illegal conduct is the dismissal of the instant action with prejudice.

Dated: November 23, 2005						Respectfully submitted,

									NANCY ANKERS WHITE
									Special Assistant Attorney General


									/s/ Richard C. McFarland
									Richard C. McFarland (BBO# 542278)
									Legal Division
									Department of Correction
									70 Franklin Street, Suite 600
									Boston, MA  02202
									(617) 727-3300  ext. 132

5

## **CERTIFICATE OF SERVICE**

    I, Richard C. McFarland, counsel for Defendants, hereby certify that I served a copy of the foregoing document upon *pro se* plaintiff, Sandy Jo Battista, by regular mail, postage prepaid, to his address: Massachusetts Treatment Center, 30 Administration Rd., Bridgewater, MA  02324.

| | |
|---|---|
| Dated:  November 23, 2005 | /s/ Richard C. McFarland____<br>Richard C. McFarland |

Sandy J. Battista, #M-15930
Mass. Treatment Center
30 Administration Rd.
Bridgewater, Mass. 02324-3230

---

Dated: October 21, 2005.

Cynthia Osborne
C/O John Hopkins University
104 E. Biddle Street
Baltimore, MD. 21202

ATTN: Gender Identity Clinic

Dear Ms. Osborne:

    I am writing in regards to my previous correspondence to you dated August 17, 2005. Which I've yet to receive any reply from you. Here, as you may recall, in my August 17th correspondence, I relayed my concerns to you that the Massachusetts Department of Correction("DOC") was attempting to deprive me of access to previously prescribed treatment (hormonal therapy), determined by numerous health care providers to be "medically necessary and appropriate" to treat my life long persistent gender issues, by employing you in an attempt to discredit the competence of their own contracted gender specialists.

    On 10/17/05, I directed my concerns to the DOC's current Acting-Director of Health Services, Peter Heffernan, that the prolonged delay in your final determination in this matter was having severe adverse affects on my emotional well being, causing me recently to attempt to castrate myself. (A copy of which is attached herewith for your review and convenience).

    In closing, I ask that you review the enclosed copy of my correspondence, with supporting Attachments, to Acting-Director Heffernan, as if originally directed towards your attention as well. Here, upon your review you will clearly see for yourself that your delay in bringing about a decision in this matter has not only caused me physical harm, but has increased my suicde ideation tremendously. Respectfully Ms. Osborone, it is going on six (6) months now and yet you have not made any determination in this matter. Due to the nature and urgency of this matter I respectfully feel this is bordering on "negligence."

    Lastly, what I inadvertently failed to mention to you in my August 17th correspondence, is that, this whole matter is currently the subject of a Federal Complaint. See <u>Sandy J. Battista vs. Kathleen M. Dennehy, Commissioner, et al.</u>, U.S.Dist.Ct.C.A.No.05-11456-DPW.(On file). Which, if left with no other alternative, I will without question supplement my pleadings to add a claim against you for violations of my due process rights. Additionally, as mentioned from my independent gender specialist, Ms. Diane Ellaborn, LICSW, who is an appointed member to the Harry Benjamin International Gender Dysphoria Association's Ethics Committee, your evaluative processes will also be the subject of review. As such, I kindly request your immediate attention and position in this matter.

-2-

Thank you for your consideration, review, and attention in this matter. I look forward to your reply before proceeding further in this matter.

Sincerely,

Sandy J. Battista, #M-15930

cc: S.J.B.(FILE)
    Diane Ellaborn, LICSW, Ethics Committee

Sandy J. Battista, #M-15930
Mass. Treatment Center
30 Administration Rd.
Bridgewater, Mass. 02324-3230

Dated: 10/17/05.

Peter Heffernan
Acting-Director of Health Services
Department of Correction
Health Services Division
P.O. Box 426
Bridgewater, Mass. 02324-3230

Dear Acting-Director Heffernan:

HI, my name is Sandy J. Battista. I am currently civilly committed to the Massachusetts Treatment Center("MTC"), under a Superior Court Order of Civil Detention, pursuant to Mass. Gen. Laws Chapter 123A, Section 14(d), as amended through St.-1999, c.74, §§3-8. I am writing in regards to an URGENT matter involving the 'daily' deterioration of my emotional well-being. As Acting-Director of the Department of Correction("DOC") Health Services Division("HSD"), I respectfully request your immediate and prompt attention to the enclosed matter. For your review, please note the following procedural history:

On 8/10/04, upon my request, and in accordance with the recent Federal District Court decision in **Kosilek vs. Maloney,** 221 F.Supp.2d 156 (D.Mass.2002), arrangements were made for me to be seen by two independently retained gender specialists, for the purpose of diagnosis and the development of an appropriate medical and mental health treatment plan to address my life-long persistent gender issues.

On 11/16/04, the above examiners submitted their report containing their clinical diagnosis and treatment recommendations. In their report, both the above examiners determined that I met all of the clinical diagnostic criteria for [Gender Identity Disorder(NOS)], and recommended that I be placed on hormonal therapy, as well as individual counseling to support the adjustment the hormones will bring. Shortly thereafter, in accordance with those treatment recommendations, arrangements were made for me to be seen by a mental health clinician, to address the mental health component of the recommended treatment plan.

On 4/12/05, also in accordance with the above treatment recommendations, arrangements were made for me to be seen by an outside endocrinologist for the development of an adequate prescription, to address the medical component of the recommended treatment plan.

In re: Sandy J. Battista, #M-15930                             Page-2

   On 4/14/05, the Treatment Center's Health Services Administrator, Maryanne Percuoco, approved the above medical prescription and instructed the Treatment Center's in-house physician to fill said prescription.

   On 4/25/05, I was informed in person by the Treatment Center's Health Services Administrator, Maryanne Percuoco, that the DOC's (former) HSD, Susan J. Martin, had raised concerns about the competence of the above examiner's clinical diagnosis and treatment recommendations. And, therefore, was conducting a medical review to determine the "medical necessity and appropriateness in the context of a 'prison environment.'" (Despite the fact that I am not housed in a "prison environment").

   On 4/26/05, as a direct and proximate result of this recent development, I had an emotional breakdown and was placed both under a pyschiatrist's care, as well as antidepressants, due to the overwhelming anxiety and sense of hopelessness I was experiencing over being deprived treatment for my gender issues.

   On 5/9/05, I was removed from general population and placed on administrative watch, due to the continual deterioration in my emotional well-being, over the delay in being provided treatment for my gender issues.

   On 5/17/05, the Treatment Center's in-house medical psychiatrist 'doubled' the dosage in my antidepressants, due to the continual deterioration in my emotional well-being.

   On 9/13/05, the Treatment Center's in-house medical psychiatrist prescribed an additional antidepressant, due to the continual deterioration in my emotional well-being.

   On 10/4/05, the Treatment Center's in-house medical psychiatrist determined that the above prescribed antidepressants were having no affect in alleviating the symptoms I was experiencing in being deprived the above prescribed treatment for my gender issues, and discontinued said treatment. (See ATTACHMENT-1).

   On 10/8/05, feeling overwhelmed and a sense of hopelessness that I'll never be approved for the prescribed treatment at issue, I saw no other recourse but to take a razor blade and attempt to castrate myself, requiring five stiches, and a prescription for antibiotics, due to infection. (See ATTACHMENT-2).

   Prior to being informed that the prescribed treatment at issue was allegedly on 'hold' pending review by your office, I was an active and productive participant in my on-going sex offender therapy, goal oriented, energenic and athletic, interacted socially with my peers and staff, as well as had a healthly eating and sleeping habit. I awoke every day eager knowing that I was finally approved for treatment that would give me a normal body like every body else.

   As of date of this writing, each and every day I am so overwhelmed with anxiety and depression that it is affecting my ability to participate in my sex offender treatment. All I can think is having to bare the rest of my commitment trapped in this distorted body, and frequently contemplate castrating myself, or worse, committing suicide. I often find myself pacing the floors for hours,

In re: Sandy J. Battista, #M-15930                                Page-3

crying, sleeping all day and night because it's to unabrable to be awake, neglecting my personal hygiene, and isolating myself from my peers. At other times I am so frustrated and angry that it causes conflicts between myself and my peers, as well as with staff. Every single day for the last six months waiting for an answer from your office has just been hell for me. The anticipation is just to much to bare any longer. I've already attempted to castrated myself. Now all I think of is killing myself. Most of the time I think I'd be better off dead. It's obvious to me that no one cares, or why else wouldn't your office give me final approval for the treatment at issue. "Treatment" that will relieve my 'daily' suffering, as well as finally giving me a normal body like every one else has. "Treatment" that is also openly being provided to several state prisoners. Yet, I am denied, at a minimum, the same level of care and treatment as state prisoners. Despite the fact that I am civilly-committed. And therefore, constitutionally entitled to "more considerate treatment and conditions of confinement than criminals, whose conditions of confinement are designed to punis." Here, you need only contact the Treatment Center's Health Services Director, Maryanne Percuoco, Director of Mental Health, Dianne McLaughlin, or it's in-house medical psychiatrist, Dr. Bauermiester, to confirm all of the enclosed. Respectfully sir, you are the Acting-Director of Health Services. You cannot knowingly ignore the enclosed. Especially in the recent attempt at self-castration. **PLEASE!!! I BEG OF YOU — RELIEVE MY SUFFERING BEFORE IT'S TO LATE.**

In closing, aside from the above issues involving the deterioration in my emtotional well-being and increased risk of harm. Withholding the treatment at issue will have a severe impact on my liberty, as well as the "remedial" aspect of my confinement. For example, as noted above, I am "civilly-committed." Committed for "treatment" and "rehabilitation" only. Moreover, the clinical properties of the DOC's current Treatment Providers's treatment methodology (Cognitive Behavior Modification Therapy), requires me to address all components of my "Sexual Deviant Cycle," as well as all components of my "Here and Now Cycle." Which my current treating therapists have determined that my "gender issues" are part of. (See ATTACHMENT 3). However, as I am not a specialist in this area, nor do I claim to be, you need only contact my treating therapist, Janna Douglas, which I'm sure will be more than happy to explain how my gender issues are linked to my "Here and Now Cycle." And for that matter, what a "Here and Now Cycle" consists of. Here, knowingly depriving me of access to treatment that has been determined to be a "necessary component of my individualsex offender treatment plan, will have an obvious impact on my liberty and "remedial" aspect of my confinement.

Lastly, it has been almost six months now since the DOC's (former) HSD, Susan J. Martin first claimed that the prescribed treatment at issue was under review. And, as of date, I've received no reply or answer from your office. In light of the situation at hand, this is bording on "gross negligence." As current Acting Director of the DOC's Health Services Division, you are the "sole"

In re: Sandy J. Battista, #M-15930                                    Page-4

decision-maker in final approval in this matter. Any further prolonged delay in the determination of such, can only be intrepreted as "arbitrary," and a disregard to my emotional health and well-being. Here, respectfully I understand sir that the DOC's (former) HSD, Susan J. Martin, upon leaving office, left this matter on your plate. And, therefore, originally you played no role. Unfortunately, this matter is now up to you. As such, respectfully, due to the urgency in this matter, as outlined above, I`am requesting your immediate attention and final decision in this matter.

    Thank you for your consideration and attention in the enclosed matter.


Sincerely,

*/s/ Sandy J. Battista*
Sandy J. Battista, #M-15930


cc: S.J.B.(FILE)

# UMASS CORRECTIONAL HEALTH
## PROGRESS NOTES

Institution: MTC

NAME: BATTISTA, Sandy   ID #: M15930   D.O.B. 12/30/61

| DATE | TIME | NOTES |
|---|---|---|
| )/4/05 | 9:15 | PSYCHIATRY, Bauermeister, M.D.<br>This is a 43 yr old inmate who carries the diagnosis of GENDER IDENTITY DISORDER.<br>Rx.: Prozac 20 mg po am and Doxepin 100 mg po hs.<br>I received a referral from Dr. Carpenter:<br>"Patient complains about feeling jittery and "drugged out" – "the meds are not working"...<br>Mr. Battista made the case that the Rx had not helped him – with which I concur.<br>We also had reached an understanding that his disappointment and anger might be justified feelings not amenable to change from any medication.<br>He told me that he had been under the impression that he had to take the medication and that if not, he would be accused of "refusing treatment".<br>Nothing in my dealing with Mr. B. indicates that I ever wanted to "force him". It also shows that I had been quite open with him about the possible failure of medication. Certainly, I do not consider Rx a treatment "must".<br>After having failed to make him feel better on Rx and in view that I have never given him any diagnosis other than gender identity disorder, for which there is no medication indication in the first place, I shall discontinue his Rx, not because he "refusses" Rx, but because I do not see any indication for it after failed trial to decrease his disappointment and anger.<br><br>Martin Bauermeister, M.D. |

Attachment A

OBR No. 05-233

## MASSACHUSETTS TREATMENT CENTER
## OBSERVATION OF BEHAVIOR REPORT

Resident Name Battista, Sandy Jo    Comm. No. m-15930    Unit C-2

Date 10-10-05    Time 12:15 pm    Reporting Staff Carlos Camboia

Behavior Observed Self Mutilate    Code No. B-17

Witness (if any) _____

Referred to District Attorney _____

Type or print in INK your report of the noted behavior. Use the reverse if more space is necessary.

On 10-10-05 at approx 12:15 Civil inmate Sandy Jo Battista m-15930 entered HSU asking to see mental Health. Inmate Battista then spoke to crisis person Paul Garrido. The inmate Battista was escorted to speak to Nurse Kathleen Grab in which inmate Battista stated to her in the presence of this officer. "On Saturday at approx 4:30 pm that he tried to castrate himself, by Freezing his testicals and cut his scrotum, but then he couldn't go through with it. At this time I c.o. Camboia notified Cpt. Gentile. Inmate Battista was sent to outside Hospital. End of Report

Has the resident been placed on pre-hearing restriction? No ___ Yes ___ Approved By _____

Type of Restriction(s) _____

Reporting Staff signature Carlos Camboia    Date 10-10-05  shift/days off W/T

Shift Commander signature James P. Gentile Cpt    Date 10-10-05

Finding and sanction if any _____

Appeal results _____

Reviewing Authority _____    Date _____