## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**SANDY JO BATTISTA,**

     **Plaintiff,**

     **v.**               **Civil Action No. 05-11456-DPW**

**KATHLEEN M. DENNEHY, et al.,**

     **Defendants.**

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR RECONSIDERATION

Defendants, through counsel, hereby submit their opposition to Plaintiff's *Motion for Reconsideration of Plaintiff's Application for a Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction*. Approximately seven (7) months after the Court entered its decision, plaintiff has moved for reconsideration of the March 22, 2006 decision denying plaintiff's request for injunctive relief. Plaintiff's motion for reconsideration should be denied.

## STATEMENT OF THE CASE

Plaintiff, Sandy Jo Battista ("Plaintiff"), an individual presently under involuntary civil commitment to the Massachusetts Treatment Center for Sexually Dangerous Persons ("Treatment Center") as a sexually dangerous person, pursuant to M.G.L. c. 123A, has brought this civil action alleging a denial of treatment for his gender identity disorder ("GID"). Plaintiff also sought a temporary restraining order or a preliminary injunction requiring the defendants to provide him with GID treatment in the form of female hormones.

On March 22, 2006, the Court issued its Memorandum and Order denying plaintiff's application for a preliminary injunction. *See Battista v. Dennehy*, 2006 WL 1581528

(Memorandum and Order).   In denying plaintiff's request for injunctive relief, this Court determined that plaintiff had failed to meet the requirements for the issuance of injunctive relief.

## ARGUMENT

## I.     THE REQUEST FOR RECONSIDERATION SHOULD BE DENIED.

This Court's March 22, 2006 decision denying plaintiff's request for injunctive relief was properly decided and reconsideration of the decision is not warranted.   In its Memorandum and Order, this Court held that plaintiff had failed to satisfy the four requirements for the issuance of injunctive relief.   This Court found that plaintiff failed to demonstrate a likelihood of success on the merits of his claims; the potential for irreparable harm if relief was denied; that the balance of potential harm weighed in his favor; or that it was in the public interest to provide him with the requested relief. *See Battista v. Dennehy*, 2006 WL 1581528 **7-14.   Specifically, this Court determined that plaintiff presented "no evidence that Defendants have neglected Plaintiff's medical needs, let alone exhibited the 'wanton disregard' required to establish constitutional violation." *Id.* at 11.   This Court also found that the health care provided plaintiff meet constitutional standards where "[p]laintiff has received the individualized, specialized medical care that Chief Judge Wolf found lacking in Kosilek's case," including numerous psychological evaluations and continuing psychotherapy. *Id.* at 12-13.   This Court further determined that plaintiff had failed to demonstrate a potential for irreparable harm if the requested hormone treatment was not provided. *Id.* at 14.   Finally, this Court determined that the balance of harm favored the defendants and that it was in the public's interest that defendants be permitted to provide plaintiff with medical treatment based upon professional judgment. *Id.* at 14.

Plaintiff's motion for reconsideration should be denied on several grounds.   First, plaintiff has failed to show that this Court's March 22, 2006 decision denying the request for

injunctive relief was wrongly decided as a matter of law.  Plaintiff's motion does not cite to a single error of law in the March 22, 2006 decision.  Plaintiff does not challenge this Court's determination that he is unlikely to succeed on the merits of his claims since the facts do not support his claims under the federal equal protection or due process clauses and neither state law, G.L. c. 123A, nor DOC regulations provide a private right of action.  *Id.*  Where plaintiff has failed to demonstrate that this Court incorrectly applied the law to the facts of the case, reconsideration of the March 22, 2006 decision is not warranted.

Second, plaintiff's assertion that there have been recent changes in circumstances concerning his medical treatment that require this Court to reconsider the denial of his request for an injunction is without merit.  In support of his motion for reconsideration, plaintiff submits his own affidavit, dated November 14, 2006, which states that he was advised by two University of Massachusetts Medical School Correctional Health ("UMCH") employees, Treatment Center Health Services Director, Maryanne Percuoco and Treatment Center Director of Mental Health, Diane McLaughlin, that UMCH Medical Director, Dr. Arthur Brewer, and UMCH Mental Health Director, Dr. Kenneth Appelbaum, had "determined that [plaintiff] was a good candidate for hormone therapy" and they were "of the same opinion and recommendations as the Fenway Clinic."  Plaintiff's affidavit, dated November 14, 2006, ¶ 3.  Setting aside the fact that the statements constitute totem pole hearsay, the statements do not demonstrate a change in circumstances sufficient to warrant a reconsideration of the denial of plaintiff's request for injunctive relief.  According to the attached affidavit of Lawrence Weiner, L.I.C.S. W. of the DOC Health Services Division, there has been no change in UMCH's position because UMCH has consistently voiced its support for the August 10, 2004 report and recommendations of its consultants, the Fenway Clinic, with regard to the plaintiff.  *See* Third Affidavit of Lawrence

Weiner, L.I.C.S.W., ¶ 8.   While the UMCH Medical Director and Mental Health Director reiterated their support for the recommendations of their consultants in their October 17, 2006 response to the request of the DOC's Director of Health Services for more specific information regarding the Fenway Clinic treatment recommendations for plaintiff, the letter did not reflect a change in the UMCH.  *Id.*

Plaintiff's affidavit also erroneously states that the Department has concluded its "review process" regarding the Fenway Clinic's diagnosis and treatment recommendations for GID.  As made clear from the Weiner affidavit, the DOC Health Services Division has not concluded its review of the diagnosis and treatment recommendations for plaintiff, but remains engaged in a continuing dialog with UMCH seeking clarification regarding the vague recommendations made by the Fenway Clinic.  *See* Weiner Aff., ¶ 5.  For example, the Director of Health Services sent a letter to UMCH on July 6, 2006 requesting further clarification as to the Fenway Clinic recommendations.  *Id.,* Attachment A.  UMCH's response to the July 6, 2006 letter was dated October 17, 2006.  *Id*., Attachment B.

In addition, the DOC's Health Services Division has determined that, due to its continuing concerns regarding the thoroughness of the August 10, 2004 Fenway Clinic report, it is necessary to retain GID expert Cynthia Osborne, M.S.W. to conduct an evaluation of the plaintiff, including a personal interview with the plaintiff, a thorough review of plaintiff's medical records, including all prior psychological evaluations, and conducting necessary psychological tests.  *Id.* at ¶ 6.  While the DOC Health Services Division has experienced a delay in hiring Ms. Osborne to conduct an evaluation of plaintiff as a result of the appointment and resignation of private counsel for plaintiff, it is clear that a comprehensive review of plaintiff's mental health issues is necessary to address the clear division of opinion of mental health

professionals regarding plaintiff's diagnosis for GID.  *Id.* at ¶ 8.  Accordingly, plaintiff's claim that the DOC has completed its review of his GID diagnosis and treatment is in error.

Moreover, it is undisputed that plaintiff continues to receive psychotherapy and has not engaged in any self-injurious behavior in over one year.  Weiner Aff., ¶ 9.

Nor does the fact that plaintiff has received a trial date for judicial review of his status as a sexually dangerous person pursuant to G.L. c. 123A, § 9 require the reconsideration of this Court's earlier denial of the request for injunctive relief.  The March 22, 2006 decision specifically determined that plaintiff's treatment with female hormones did not play a role with regard to his adjudication as a sexually dangerous person under G.L. c. 123A, § 2 or continued involuntary commitment.  *Battista v. Dennehy*, 2006 WL 1581528  at 14.

Plaintiff's motion for reconsideration should be denied where he fails to present any facts or legal arguments that require a change in this Court's March 22, 2006 decision denying plaintiff's request for injunctive relief.

## CONCLUSION

For the foregoing reasons, defendants request that plaintiff's Motion for Reconsideration be denied.

Dated: December 4, 2006                    Respectfully submitted,

                                           NANCY ANKERS WHITE
                                           Special Assistant Attorney General


                                           /s/ Richard C. McFarland
                                           Richard C. McFarland,  BBO#  542278
                                           Department of Correction
                                           Legal Division
                                           70 Franklin Street, Suite 600
                                           Boston, MA 02110-1300
                                           (617) 727-3300

6

## CERTIFICATE OF SERVICE

I, Richard C. McFarland, counsel for Defendants, hereby certify that I served a copy of the foregoing pleading upon *pro se* plaintiff, Sandy Jo Battista, by first class mail, postage prepaid, to his address: Massachusetts Treatment Center, 30 Administration Rd., Bridgewater, MA 02324.


Dated:  December 4 2006                              /s/ Richard C. McFarland
                                                     Richard C. McFarland

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SANDY JO BATTISTA,

    Plaintiff,

    v.                                      C. A. No.  05-11456-DPW

MASSACHUSETTS DEPARTMENT OF CORRECTION, et al.,

    Defendants.

### THIRD AFFIDAVIT OF LAWRENCE M. WEINER, L.I.C.S.W.

I, Lawrence M. Weiner, do hereby depose and say that:

1.    I am an employee of the Massachusetts Department of Correction ("DOC") and I presently serve as the Mental Health and Substance Abuse Coordinator for the DOC's Health Services Division.  I am a licensed social worker and as the Mental Health and Substance Abuse Coordinator one of my responsibilities is to monitor the mental health care provided to the inmates within DOC facilities.  The information provided herein is based upon my personal knowledge.

2.    I am familiar with Sandy Jo Battista ("Battista"), an individual under civil commitment to the Massachusetts Treatment Center for the period of one day to life, having been adjudicated a sexually dangerous person pursuant to G.L. c. 123A, § 14(d).  I have periodically reviewed Battista's mental health records.

3.    The DOC contracts with a private vendor, the University of Massachusetts Medical School Correctional Health program ("UMCH") to provide medical, dental and mental health services to inmates within the Department's custody.  In 2004, UMCH retained a psychiatrist and psychologist with experience and training in gender disorders affiliated with the Fenway Community Health Clinic ("Fenway Clinic") of Boston, Massachusetts, Randi Kaufman, Ph.D. and Kevin

2

Kapila, M.D., to conduct an evaluations of inmates seeking treatment for gender identity disorders ("GID"), including Battista. The Fenway Clinic's August 10, 2004 evaluation of Battista determined that he met the criteria for a diagnosis of GID and recommended that Battista receive treatment with female hormones and psychotherapy. UMCH has consistently voiced their support for the Fenway Clinic report on Battista, despite the serious concerns raised by the Health Services Division regarding the lack of thoroughness and the vagueness of the August 10, 2004 report.

4.    As discussed in my two prior affidavits in this case, the DOC Health Services Division continues to harbor serious concerns regarding the appropriateness of the GID diagnosis and treatment recommendations for Battista made by the Fenway Clinic in their August 10, 2004 report. For example, the Fenway Clinic's report fails to address, or even acknowledge, the numerous psychological evaluations of Battista which raise significant questions regarding the psychological basis of Battista's desire to be castrated, including the October 19, 2001 evaluation conducted by Ronald Ebert, Ph. D., the October, 1998 psychological assessment conducted by David Campopiano, M.A. and Robert Prenky, Ph.D., the October 4, 1997 psychological evaluation by J. Tyler Carpenter, Ph.D., and the March 17, 1997 report by psychiatrist Victoria Russell. In addition, the October 10, 2005 peer review of the Fenway Clinic report by nationally recognized GID expert Cynthia Osborne, M.S.W., has caused the DOC to proceed with extreme caution regarding the recommendation for hormone treatment and Battista's request to be castrated.

5.    Since receiving the Fenway Clinic report and recommendations for Battista, the Health Services Division has also made numerous attempts to obtain more detailed information from UMCH regarding the Fenway Clinic treatment recommendations. One example of the lack of clarity of the Fenway Clinic report is the fact that while the August 10, 2004 report and recommendations for Battista did not recommend laser hair removal or female clothing, UMCH has since advised us

3

that the Fenway Clinic believes that laser hair removal and female clothing is necessary for every inmate diagnosed with GID, including Battista. As part of the ongoing attempts to obtain clarification regarding the Fenway Clinic recommendations for Battista, the Health Services Division sent a letter to UMCH on July 6, 2006 requesting detailed information regarding the Fenway Clinic treatment recommendations for Battista. Specifically the July 6, 2006 letter to UMCH sought detailed information regarding the vague treatment recommendations made by the Fenway Clinic for Battista, including the type of female hormones recommended, the requirement for laser hair removal and the specific female clothing and canteen items recommended for Battista. (Attachment A). Drs. Brewer and Appelbaum of UMCH forwarded their response to the July 6, 2006 letter on October 17, 2006. The October 17, 2006 letter from Drs. Brewer and Appelbaum provided somewhat more detailed information regarding recommended hormone and laser hair removal treatments, but failed to provide specific information regarding the recommended female clothing and canteen items recommended for Battista. The October 17, 2006 letter further stated that UMCH continued to endorse the Fenway Clinic treatment recommendations for Battista. (Attachment B).

      6.     In addition to its continuing efforts to seek clarification from UMCH and the Fenway Clinic regarding the treatment recommendations for Battista, the Health Services Division has determined that it is necessary to retain the services of Cynthia Osborne to conduct an in-person interview of the plaintiff, in order to evaluate the appropriateness of the Fenway Clinic's diagnosis of GID and to make recommendations regarding the necessary mental health treatment for Battista. The Health Services Division delayed taking action on the decision to retain Cynthia Osborne to conduct an in-person evaluation of Battista in order to permit our attorney to discuss the matter with plaintiff's court-appointed counsel. However, in light of the fact that Battista's court-appointed attorney resigned before DOC counsel could seek agreement on an evaluation of Battista by Cynthia

4

Osborne, it is my understanding that the DOC will now seek authorization from the court compelling Battista to undergo an in-person evaluation by Ms. Osborne. It is expected that the evaluation by Ms. Osborne will include an in-person examination, a detailed review of Battista's medical records including all prior psychological evaluations, as well as psychological testing of Battista. We anticipate that such a thorough evaluation will provide the DOC with a more complete picture of Battista's mental health needs.

7.    I have been made aware of Battista's recent affidavit which states that UMCH's Medical Director, Arthur Brewer, M.D. and Director of Mental Health, Kenneth Appelbaum, M.D., have stated to others that Battista "is a good candidate for hormone therapy" and that Drs. Brewer and Appelbaum are "of the same opinion and recommendations as the Fenway Clinic. However, as described above, this is not a change in the UMCH position, since UMCH, through Drs. Brewer and Appelbaum, has consistently voiced its support of the Fenway Clinic treatment recommendations.

8.    Further, contrary to the statement contained in Battista's recent affidavit, the DOC has not completed its "review process" of Battista's diagnosis and treatment for GID. As stated above, the Health Services Division believes that a full evaluation of Battista, including an in-person interview of Battista by Cynthia Osborne will provide valuable information as to the appropriateness of a GID diagnosis, as well as the type of mental health treatment most beneficial for Battista.

9.    Presently, Battista continues to receive psychotherapy from a mental health professional at the Massachusetts Treatment Center. Battista has not engaged in any self-injurious behavior since his first incident over one year ago.

Signed under the pains and penalties of perjury this 1st day of December, 2006.

Lawrence M. Weiner, L.I.C.S.W.





*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Health Services Division*
*P.O. Box 426*
*Bridgewater, Mass. 02324*
*Phone: (508) 279-8612*
*Fax: (508) 279-8651*
*www.mass.gov/doc*

Mitt Romney
*Governor*

Kerry Healey
*Lieutenant Governor*

Robert C. Haas
*Secretary*

Kathleen M. Dennehy
*Commissioner*

James R. Bender
*Deputy Commissioner*

July 6, 2006

Patti Onorato, Executive Director
University of Massachusetts Medical School
Health and Criminal Justice Program
One Research Drive, Suite 120C
Westborough, MA 01581

Dear Patti,

I am writing to confirm receipt on April 19, 2006, of your Gender Identity Disorder (GID) treatment recommendations for Mr. Sandy Jo Battista, M15930. As we discussed in our meeting on December 21, 2005, it is your responsibility as the contractual medical and mental health provider to review all outside consultant's evaluations and develop specific, detailed recommendations based upon your assessment of what proposed interventions are clinically appropriate and medically necessary. Neither the Superintendents of the institutions where these inmates diagnosed with GID reside, nor the Commissioner, are in a position to interpret the ambiguous and broad clinical recommendation set forth in the Fenway Clinic evaluations that each inmate diagnosed with GID be afforded the Harry Benjamin Standards of Care (SOC). The Department of Correction (DOC) is not in the position of *making* any GID treatment recommendations, but reviews the recommendations proposed for specific security related concerns. To this point, your clinical input regarding a more specific interpretation of the SOC, other than to say "any feminizing procedure short of sex reassignment surgery", has lacked the specificity necessary for a security review for contraindications due to the ambiguous nature of the SOC. For example, were we to assume that a "feminizing procedure" included prescribing hormones, a tracheal shave, breast augmentation, rhinoplasty, and female clothing? Also, how were we to determine who was requesting any particular treatment and for that matter, who was appropriate for any particular treatment.

While I appreciate your recent treatment proposal for Mr. Battista, which specifies counseling, hormones, facial and chest hair removal, and access to feminine clothing and canteen products, it does not reflect that in fact Mr. Battista is already receiving mental health counseling with a primary care clinician. Additionally, I still find significant information lacking, which makes it difficult to complete a thorough security review. For example, what hormones are you recommending be prescribed, and when and how are they to be administered? Where would you be scheduling his laser hair removal appointments and what type of pre or post procedure treatments might be necessary? Is there to be any specific progression or continuous review of these treatment recommendations to determine either their efficacy or whether they remain essential? For example, should he receive hormones first, determine if it impacts his hair growth

PRINTED ON RECYCLED PAPER

ATTACHMENT A

in such a way to render laser hair removal unnecessary?  Also, it is still unclear to me, what, if any, female clothing and canteen items Mr. Battista is requesting, or what you are recommending.  For example, a previous GID evaluator had specified that an inmate diagnosed with GID should have access to whatever clothing and products were available to the female inmate population at MCI-Framingham.  Consequently, please find enclosed a canteen list from MCI-Framingham, which can be used as a guide to identify specific female products you wish to recommend.   We await more clarity in your response so that the Superintendent at the Massachusetts Treatment Center may begin a security review for Mr. Battista.

Thank you for your attention to this matter.

Terre K. Marshall
Director, Health Services Division

CC: Veronica Madden, Associate Commissioner, Reentry and Reintegration


University of
Massachusetts
**UMASS.** Medical School

UMass Correctional Health
University of Massachusetts Medical School
One Research Drive, Suite 120C
Westborough, MA 01581-3922 USA
508.475.3220 (office)   508.475.3270 (fax)

*A Program of Commonwealth Medicine*

October 17, 2006



Terre Marshall, Director
DOC Health Services Division
P.O. Box 426
Bridgewater, MA  02324

Dear Ms. Marshall:

I am writing in response to your July 6, 2006 letter requesting detailed Gender Identity Disorder (GID) treatment recommendations for Sandy Jo Battista, M15930.

Dr. Warth, endocrinologist from LSH, has recommended that Sandy Jo Battista be started on Lupron 1 mg subcutaneously daily and Estradiol 0.05mg daily via patch.

Laser hair removal would be performed at Boston University Dermatology located at 930 Commonwealth AvenueWest, in Boston. Lidocaine topical cream 2.5% will be applied to the area to be treated just prior to transport by medical staff. Post treatment requires the patient applies Hydrocortisone cream 2.5% twice a day to the treatment area until the next scheduled treatment. Most patients require ten treatments and the treatments occur every 6-8 weeks. Laser hair removal should not be initiated until the patient has been on hormones for a period of time.

Please note that, we have again reviewed the question of access to feminine clothing and canteen items with our GID consultants. They have unequivocally informed us that access to such items is an "essential" component of the management of GID. Feminine attire and make-up assist the patient in "feeling more feminine…[and] secure in their identity" and provide a "signal to other persons of the social transition." It is not, however, the standard of care for medical or mental health professionals to weigh the initial or ongoing need for any particular feminine product, or any other treatments with the exception of hormones and sex reassignment surgery (SRS). Only hormones and SRS require the support of the therapist. Access to feminine attire and make-up is "based on what the individual wants and needs to feel more feminine."

ATTACHMENT B

Thus, in accordance with the recommendations of our consultants, we again recommend that, in the absence of security-related concerns and restrictions, the inmate be allowed to choose on an ongoing basis from all female canteen items or other sources of feminine attire and products that are routinely available to female inmates.

At this point, the inmate has not made specific requests at this time, however, we repeat our previous recommendations that these items, and any other items that the inmate requests going forward, be provided if they do not pose an unacceptable security risk.

You have also asked whether the treatments and interventions that we have previously recommended, and are recommending again in this letter, should be provided in a "specific progression" or be subject to "continuous review...to determine either their efficacy or whether they remain essential." Based on the consistent recommendations of our consultants, which we have previously shared and endorsed, we are again recommending that in the absence of security contraindications all of the interventions and treatments described in this letter should be provided on an ongoing basis without further evaluation for necessity.

Sincerely,

Arthur Brewer, MD
Program Medical Director
UMASS Correctional Health

Kenneth Appelbaum, MD
Director, Mental Health
UMASS Correctional Health

cc:  Patti Onorato, Executive Director, UMASS Correctional Health