UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

SANDY J. BATTISTA,
    Plaintiff,

C.A.No.05-11456-DPW.
2006 DEC 18 P 3: 13

vs.

U.S. DISTRICT COURT
DISTRICT OF MASS.

KATHLEEN M. DENNEHY, Commissioner, et al.,
    Defendant's.

## PLAINTIFF'S MOTION FOR LEAVE TO FILE A REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff, Sandy J. Battista, acting pro-se in the above referenced matter, hereby requests leave to file a REPLY to Defendants' Opposition to Plaintiff's Motion for Reconsideration.[1]

As grounds thereof, plaintiff states that Defendants' Opposition at issue is obfuscatory and contains additional facts and circumstances, and that further clarification is necessary for the court's complete consideration of the plaintiff's Motion for Reconsideration.

Dated: 12/12/06 .          Respectfully submitted,

Sandy J. Battista, #M-15930
Plaintiff/Pro-se
Mass. Treatment Center
30 Administration Rd.
Bridgewater, Mass. 02324

[1] On 11/22/06, this Court (Woodlock, J.) issued an order STAYING the case pending resolution of plaintiff's counsel issue. However, since the defendant's have ignored this order, as evident by their present filings, plaintiff will be submitting the enclosed motion pro-se. However, requests the court STAY it's decision pending resolution of plaintiff's counsel issue.

UNITED STATES DISTRICT COURT

FILED

DISTRICT OF MASSACHUSETTS   IN CLERKS OFFICE

SANDY J. BATTISTA,
        Plaintiff,

C.A.No. 05-11456-DPW

2006 DEC 18  P 3: 13

vs.

U.S. DISTRICT COURT
DISTRICT OF MASS.

KATHLEEN M. DENNEHY, Commissioner, et al.,
        Defendant's.

## PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION
## TO PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff, Sandy J. Battista, acting pro-se in the above referenced matter, hereby responds to the Defendants' Opposition to Plaintiff's Motion for Reconsideration.

### STATEMENT OF THE CASE

On 7/6/05, along with the Complaint, plaintiff filed her application for preliminary relief. The "core" of plaintiff's application for preliminary relief alleged that "the Department of Correction("DOC") was arbitrarily withholding 'medically pre-scribed treatment."

On 7/22/05, in response to plaintiff's application for pre-liminary relief, the DOD defendants' submitted their opposition, attaching the Affidavit of a Lawrence M. Weiner, LICSW, as well as previous evaluations of the plaintiff.

On 10/17/05, plaintiff filed a motion for leave requesting to supplement her application for preliminary relief by submitting her own "sworn affidavit."

On 10/26/05, DOC defendants' filed their response to plain-tiff's October 17, 2005 Affidavit, attaching the Second Affidavit

of Lawrence M. Weiner, LICSW, and the medical peer review report
of a Cynthia S. Osborne, MSW.

On 3/22/06, this Court (Woodlock, J.) issued it's MEMORANDUM
AND ORDER denying plaintiff's application for preliminary relief.

On 11/14/06, plaintiff motioned the court for reconsideration
of the denial of her application for preliminary relief.

On 12/4/06, DOC defendants' filed their opposition to plain-
tiff's motion for reconsideration. Which is the subject matter
of the within Reply.

## DISCUSSION

Plaintiff's Motion For Reconsideration Should be ALLOWED. Where,
As Here, Defendants' Actions Constitutes An Arbitrary And Malicious
Attempt to Witthold Medically Necessary Approved Treatment.

In their Opposition at hand, DOC defendants' attempt to
seek the court's dismissal of plaintiff's motion for reconsider-
ation by obscuring plaintiff's newly developed evidence and leaving
out critical facts, as outlined below.

First, DOC defendants' argue that, plaintiff's Motion for
reconsideration should be denied "because plaintiff has failed
to show that this court's March 22, 2006 decision denying her
application for preliminary relief was wrongly decided as a matter
of law." Here, plaintiff takes no position with this court's
March 22, 2006 decisions. To the contrary, plaintiff's motion at
hand requests the court's reconsideration based upon "newly dis-
covered evidence." See Holstein vs. City of Chicago, 149 F.RD.
147, 148 (N.D.Ill.1993)(discussing motions addressing a change
in the facts or law for reconsideration).

Second, as further grounds, DOC defendants' argue that "the

statements in plaintiff's affidavit in support of her motion for
reconsideration constitute 'totem pole hearsay,'" and "do not
demonstrate a change in cicumstances sufficient to warrant a recon-
sideration of the denial of plaintiff's application for preliminary
relief." Here, it is conceded, in part that "a statement, other
than one by the declarant ... offered into evidence to prove the
truth of the matter asserted" is defined as "hearsay." Rule 801(c),
Fed.R.Evid.. However, a statement is not hearsay if it is an "adm-
ission by a party-opponent." $\frac{1}{}$ Rule 801(d)(2), Fed.R.Evid.; Larez
vs. City of Los Angeles, 946 F.2d 630, 642 (9th Cir.1991)(state-
ments by police chief indicating approval of others' misconduct
could come in as admissions to support claim of chief's liability).
Nevertheless, the documents attached herewith and marked as ATTACH-
MENT-A, clearly support the statements declared in the plaintiff's
affidavit at issue. $\frac{2}{}$ Moreover, defendants' own current pleadings
not only supports plaintiff's declarations, but reveals critical

---

[1] The full definition of a party-oponent is:

  The statement is offered against a party who is (A) his own
  statement, in either his individual or a representative capacity,
  or (B) a statement of which he has manfifested his adoption or
  belief in its truth, or (C) a statement by a person concerning
  the subject, or (D) a statement by his agent or servant concerning
  a matter within the scope of his agency or employment, made during
  the existence of the relationship, or (E) a statement by a co-
  conspirator of a party during the course and in the furtherance
  of the conspiracy.

Rule 801(d)92), Fed.R.Evid..

[2] In most cases, prison documents will be admissible as "records of
regularly conducted activity" (often termed "business records"), Rule 801(6),
Fed.R.Evid.; Wheeler vs. Sims, 951 F.2d 796, 805 (7th Cir.), cer. denied,
113 S.Ct. 320 (1992), or "public records and reports." Rule 801(8), Fed.-
R.Evid.; Beech Aircraft Corp. vs. Rainey, 488 U.S. 153, 161-70 (1988).

facts which defendants' neglect to point out. For example, according to defendants', the Third Affidavit of Lawrence M. Weiner, LICSW, attached to it's opposition at hand, shows no change in the University of Massachusetts Medical School Correctional Health Program("UMCHP") employee's position since the court's March 22, 2006 decision denying plaintiff's application for preliminary relief. Here, what defendants' neglected to provide the plaintiff with, and this court, is that on December 21, 2005, prior to the court's March 22, 2006 decision, UMCHP and the DOC's Health Services Division("HSD"), had a meeting to discuss the recommendations in the Fenway Clinic's November 2004 evaluation of the plaintiff, the defendants' own medical peer review report of a Cynthia S. Osborne, MSW, as well as concerns raised by the Director of the DOC's HSD. See ATTACHMENT-A to the Defendants' Opposition to Plaintiff's Motion for Reconsideration("defendants' ATTACHMENT-  "). At which time the Director of the DOC's HSD admitted that "it is the responsibility [of UMCHP] as the contractual medical and mental health provider to review all outside consultant's evaluations and develop specific, detailed recommendations based upon [UMCHP's] assessment of what proposed interventions are clinically appropriate and medical necessary,"..."The DOC is not in the position of making any GID treatment recommendations, but reviews the recommendations proposed for security related concerns." (Defendants' ATTACHMENT-A).  $\frac{3}{}$  And further requested

[3] 103 DOC Section 610.01, entitled: "General Policy" to the Regulations governing Clinical Contract Personnel and the Role of DOC Health Services Division, states, in relevant part that:

..."the contractual medical provider shall be responsible for making all decisions with respect to the type, timing and level of services needed by inmates covered by the contractual agreement with the Department of Correction."

103 DOC Section 610.01(2), (General Policy), which states, in part:

-5-

clarification of UMCHP's treatment options "to conduct a security review for contraindications." (Id.). On 10/17/06, in accordance with the Director of the DOC's HSD requests, UMCHP provided detailed clarification to it's previous proposed treatment options, as well as reiterated that ..."in the absence of security contraindications all of the interventions and treatment recommendations described in this letter should be provided on an ongoing basis 'without further evaluation for necessity.'" (Defendants' ATTACHMENT-B).

Third, and lastly, the likelihood of plaintiff's success, in lieu of the above, warrants the court's reconsideration for the following reasons. (A) court's generally agree that a medical need is "serious" if it "has been diagnosed by a physician as mandating treatment...." Johnson vs. Busbee, 953 F.2d 349, 351 (8th Cir. 1991); Gaudreault vs. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990); Monmouth County Correctional Institution In-mates vs. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987), cert. denied, 486 U.S. 1066 (1988); Ramos vs. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981) and cases cited. In this case, as outlined above, UMCHP's Executive Medical and mental Health Physician's thought the plaintiff's problem was serious enough "to determine it medically necessary she be provided treat-ment without the need for further evaluation." (Defendants' ATTACHMENt-B). The plaintiff's problem is therefore "serious" under the holdings above. (B) A medical condition is serious if

FOOTNOTE 3/ Continued:

...."matters of medical, mental health and dental judgments are the sole province of the responsible physicians, psychiatrists or dentists." See ATTACHMENT-C to Plaintiff's Opposition to Defendants' Motion for an Order Compelling Plaintiff to Sumbit to a Mental Examination. ("Plff.Opp. ATTACHMENT-   "). See Kosilek vs. Maloney, 221 F.Supp.2d 156, 176 (D.Mass. 2002).

if it "significantly affects an individual's daily activities."
McGuckin vs. Smith, 974 F.2d 1050, 1060 (9th Cir.1991). Here,
defendants' argue that because plaintiff has not engaged in any
self-injurious behavior in over a year and receives psychotherapy,
she has failed to proved irreparable harm. However, what the def-
endants' neglect to point out to the court, is that the "psycho-
therapy" plaintiff's is being offered is not being provided by
a person experienced or trained to counsel persons afflicted with
gender disorders. Additionally, the affect plaintiff's gender
issues have on her on a 'daily' basis amounts to an "unnecessary
wanton infliction of pain." See Brock vs. Wright, 315, F.3d 158,
163-64 (2nd Cir.2002). Moreover, this court's own March 22, 2006
decision recognized the physical and emotional affect plaintiff's
gender issues have had on her. See MEMORANDUM AND ORDER, (Dated:
March 22, 2006)(Woodlock, J.), at pages 29 & 31. Thus, plaintiff's
problem "significantly affactes" her daily activities. And (C)
defendants' conduct in "currently" disregarding their own primary
contractual medical providers decisions, as well as firmly estab-
lished DOC regulations, and neglecting to bring these critical
facts before the court and plaintiff's attention, amounts to
"deliberate indifference." "[I]ntentionally interferring with the
treatment once prescribed" is one of the forms of deliberate ind-
ifference cited by the Supreme Court in Estelle vs. Gamble, 429
U.S. 97, 105 (1976). Here, defendants argue that a final decision
regarding plaintiffs treatment has not been made, "because the
Director of the DOC's HSD still has concerns regarding the thor-
oughness of the Fenway Clinic's performance." For the purpose of
this argument, it is immaterial that one or more of the DOC's

administrative officials may still harbor concerns regarding the
Fenway Clinic's thoroughness of the plaintiff's November 2004
evaluation. As demonstrated above, it is the contractual medical
prover's, per policy, that has sole province over matters of medical,
mental health or dental judgments. (Plff.Opp., ATTACHMENT-C, at
103 DOC §610.01(2)). Nevertheless, UMCHP's Executive medical and
Mental health Physician's have clarified all of the DOC's HSD
requests for clarification, and have recently determined plaintiff's
treatment "to be medically necessary without the need for further
evaluation for necessity." (Defendants' ATTACHMENT-B). Defendants'
further argue that, because the DOC's HSD still has concerns re-
garding the thoroughness of the Fenway Clinic's evaluation of the
plaintiff, a second gender evaluation and complete psychological
assessment of the plaintiff is warranted. However, no where in the
defendants' pleadings and affidavits in opposition to plaintiff's
initial application for preliminary relief did they put forth the
requirement for a second gender evaluation and a complete psycho-
logical assessment of the plaintiff was warranted before providing
plaintiff with the prescribed treatment at issue. To the contrary,
in their pleadings and affidavits, defendants' alleged that they
were withholding plaintiff's prescribed treatment "pending a 'peer
review' by a Cynthia S. Osborne, MSW, of the Fenway Clinic's
clinical evaluations and treatment recommendations of the plain-
tiff's November 2004 evaluation." However, because the defendants'
do not agree with the outcome of the recent meeting held between
UMCHP and the DOC's HSD on December 21, 2005 or, UMCHP's recent
October 17, 2006 final decisions, defendants' only now put forth
the requirement to conduct a second gender evaluation and complete

-8-

psychological assessment of the plaintiff. See, e.g., <u>United</u> <u>States vs. Tierney,</u> 760 F.2d 382, 388 (1st Cir.)("Having one's cake and eating it, too, is not in fashion in this circuit"), cert. denied, 474 U.S. 843 (1985); see also, e.g., <u>Commonwealth</u> <u>vs. Poissant,</u> 445 Mass. 558, 823 N.E.2d 350, 356 (Mass.2005) ("The Commonwealth cannot seek successive examinations by different experts until it obtains the opinion it desires").

CONCLUSION

For the foregoing reasons, plaintiff requests that her Motion for Reconsideration be <u>ALLOWED.</u> Alternatively, plaintiff requests the court hold an evidentiary hearing, at which time all parties' to this matter may appear and give testimony to each fact at issue.

Dated: _12/12/06_ .          Respectfully submitted,

Sandy J. Battista, #M-15930
Plaintiff/Pro-se
Mass. Treatment Center
30 Administration Rd.
Bridgewater, Mass. 02324

**CERTIFICATE OF SERVICE**

I, Sandy J. Battista, hereby certify's that I have today served a true and accurate copy of the within filing on counsel of record for the defendant's, by mail.

Dated: _12/12/06_ .

Sandy J. Battista, #M-15930
Plaintiff/Pro-se

 University of
Massachusetts
**UMASS**.Medical School

**UMass Correctional Health Care**
Massachusetts Treatment Center
30 Administration Road
Bridgewater, MA 02324
508-279-8406

Maryanne Percuoco
Health Services Administrator

November 22, 2006

Dear Mr. Sandy J. Battista (M 159300),

On Monday 11/13, myself and Diane McLaughlin met with you to discuss the two grievances you submitted on 11/7/06 specifically regarding an update on your gender treatment.

You were informed that contact had been made with Dr. Appelbaum by Diane McLaughlin (see enclosed memo) and that UMASS has made their recommendations for hormone therapy and submitted them to the D.O.C. Health Services Division.

The decision, whether to begin hormone treatment or not, must be approved by the Health Services Division. It is up to them in conjunction with the site superintendent when and if we can begin treatment.

I then referred you to the program director of the Health Services Division, Terre Marshall. UMASS has completed their review so the final decision is up to them.

You were satisfied with the outcome of our meeting as you were directed to the only department who can give you a final response regarding hormone therapy.
Thank you for bringing this matter to my attention.

Sincerely,

Maryanne Percuoco

Maryanne Percuoco

ATTACHMENT-A

# MEMORANDIUM

TO:      Sandy Jo Battista

FROM:   Diane McLaughlin, Mental Health Director

DATE:    November 22, 2006

RE:       Gender Identity Disorder

---

As per our meeting with Maryanne Percuoco, HSA, I am sending this memo to reiterate that this writer did consult with Dr. Appelbaum on your behalf regarding your GID issues.

Dr. Appelbaum informed this writer that he sent his recommendations for your GID treatment to the DOC Health Services.