UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: SANDY J. BATTISTA, Plaintiff

C.A.No.05-11456-DPW.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR AN ORDER COMPELLING PLAINTIFF TO SUBMIT TO A MENTAL EXAMINATION**

Plaintiff, Sandy J. Battista, acting pro-se in the above referenced matter, hereby submits the following Memorandum of Law in Support of her Opposition to Defendants' Motion for An Order Compelling her to Submit to a Mental Examination.

**ARGUMENT**

Rule 35(a) of the Federal Rules of Civil Procedure provides that "when the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examnation by a physician or to produce for examination the person in his custody or legal control. The order made be made only on a motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." Id.

Rule 35 requires the trial judge, who must decide, as an initial matter in every case, whether the party requesting a physical or mental examination or examinations has adequately demonstrated the existence of the Rule's requirements of "in controversy" and "good cause." Schlagenauf vs. Holder, 379 U.S.

104, 118-19 (1964). The grant or denial of a Rule 35 Motion "clearly...rests in the sound discretion of the trial court." Real vs. Hogan, 828 F.2d 58, 63 (1st Cir.1987).

**Defendants' Have Not Adequately Demonstrated the "In Controversy" and "Good Cause" Requirement.**

In the Defendants' Motion for An Order Compelling the Plaintiff to Submit to a Mental Examination("the Motion"), defendants' allege that plaintiff "has placed [her] mental condition into controversy where [her] Complaint seeks treatment for [her] alleged gender disorder,"...and "as a result of [her] gender disorder, [she] is potentially at risk for suicide or self-inflicted injury if [she] does not receive the medical treatment [she] demands." (The Motion, at pages 2-3).

As argued above, the court must first determine whether the moving party has established the other party's physical or mental condition as being in controversy. Schlagenauf, 379 U.S. at 118-19; Sabree vs. United Bhd. of Carpenters & Joiners of Am., Locall 33, 126 FRD 422, 426 (D.Mass.1989). In the case at bar, it was the defendants', not the plaintiff, who placed her mental condition in controversy, by raising concerns regarding the competence of the Fenway Clinic's November 2004 evaluation of the plaintiff. See Affidavit of Lawrence M. Weiner, LICSW, attached to Defendants Kathleen M. Dennehy, Robert Murphy, Susan Martin, Steven Fairly and Gregory Hughes Opposition to Plaintiff's Request for a Preliminary Injunction(dated: July 22, 2005)(on file). See also Second Affidavit of Lawrence M. Weiner, LICSW, attached to the Response of Defendants Kathleen M. Dennehy, Robert Murphy, Susan Martin, Steven Fairly and Gregory Hughes to Plaintiff's

<u>October 17, 2005 Affidavit</u>(dated: October 26, 2005)(on file). To the contrary, the Complaint, although some what inartfully drafted, alleges that "the defendant's violated plaintiff's statutory and constitutional rights by arbitrarily withholding 'medically prescribed treatment,'" and contends as a result, "has suffered physical and emotional injuries." Complaint, ¶¶ 34-40,43,47,58 & 64; see also <u>Plaintiff's Motion for Leave to Supplement her Pending Application for Preliminary Relief & Affidavit</u>(dated: October 17, 2005)(on file). Here, had plaintiff introduced evidence regarding the "substance" of the Fenway Clinic's August 2004 evaluation, rather that it's "existence," arguably, defendants' may have adequately demonstrated the "in controversy" requirement. See <u>John Doe vs. Leo J. O'Neil,</u> Worcester C.A.No. 04-2513 (Mass.Super.Ct. Jan. 26, 2006)(Locke, J.)(2006 Mass.Super. LEXIS 80)(citing to <u>Vanderbilt vs. Town of Chilmark,</u> 174 FRD 225, 230 (D.Mass.1977)). See <u>Schlagenauf,</u> 379 U.S. at 119-21. Cf. <u>Bridges vs. Eastern Kodak Co.,</u> 850 F.Supp. 216, 223 (.S.D.N.Y. 1994)("Although the defendants will be permitted to inquire into the plaintiff's personal hitories, it must be emphasized that defendants may not engage in a fishing expedition by inquiring into matters totally irrelevant to the issue of emotional distress. In other words, the scope of the inquiry must be limited to whether, and to what extent, the alleged harassment caused plaintiff's to suffer emotional harm").

Likewise, defendants' argue in support of their position that good cause exist for this court's order under Rule 35(a), because "where there are divergent opinions among mental health professionals who have examined plaintiff regarding the existence

-4-

of a gender disorder, a complete mental examination...is necessary to assist the DOC's Health Services Division in evaluating the existence of a gender disorder and the medical necessity of medical treatment," and because "the DOC's Health Services Division still has serious concerns regarding the thoroughness of the Fenway Clinic's evaluation of the plaintiff and defendants belief that a complete evaluation of plaintiff is required before irreversible treatment is authorized." (The Motion, at pages 3-4).

A finding of "good cause" must be based on a particular factual determination of potential harm, not on mere conclusory statements. See 8 C. Wright & A Miller, Federal Practice and Procedura, §2035, at 264-65; see General Dynamics Corp. vs. Selb Manufacturing Co., 481 F.2d 1204, 1212 (8th Cir.1973)(burden on movant to make specific demonstration of necessity for protective order), $\underline{1/}$ cert. denied, 414 U.S. 1162 (1974); Koster vs. Chase Manhattan Bank, 93 FRD 471, 479-80 (S.D.N.Y. 1982)("the court must find that definite criteria have been satisfied before issuing a protective order); cf. Schlagenauf, 379 U.S. at 118-19 (good cause under Fed.R.Civ.P. 35(a) must be based on more than "conclusory allegations").

---

[1] Rule 35 must be subjected to the provisions of Rule 26(c) which permits court to make any other order which justice requires to protect the party or person from annoyance, embarassment, oppression, undue burden, or expense. Swift vs. Swift, 64 FRD 440 (E.D.N.Y. 1974).

Applying the principles above to the record at hand reveals the weakness of the defendants' claims of good cause for several reasons. First, what the defendants fail to point out, is that, "the Fenway Clinc" is the defendants' own contracted physicians, not the plaintiff's. [2] Additionally, defendants' also fail to point out, that a copy of the Fenway Clinic's November 2004 evaluation of the plaintiff and the defendants' peer review of the competence of the Fenway Clinic's clinical evaluations and treatment recommendations concerning the plaintiff's November 2004 evaluation, conducted by a Cynthia S. Osborne, MSW, as well as concerns raised by the DOC's Health Services Division were all the subject of a meeting held on December 21, 2005. At which time, as it appears from the letter from the Director, Terre Marshall, of the DOC's Health Services Division to UMass University medical School's Executive Director, Patti Onorato (ATTACHMENT-A), as of July 6, 2006, the DOC's Health Services Division had accepted UMass Medical School's findings and treatment recommendations, regarding plaintiff's gender issues. However, requested clarification of UMass Medical School's treatment recommendations to conduct "a security review" before implementing the treatment recommendations. (Id.). On October 17, 2006, in accordance with the DOC's Health Services Division's request for clarification, UMass Medical School's Executive Medical Personnel, Dr. Arthur Brewer, MD, and Dr. Kenneth Appelbaum, MD, reiterated the medical necessity

---

[2] After a party has submitted to one physical examination by a physician of his adversary's selection and has furnished his adversary with a report of his own physician's examination, he should not be required to submit to a second examination. Rutherford vs. Alben, 1 FRD 277 (D.C.W.Va. 1940).

-6-

of their treatment recommendations, provided the DOC's HSD with clarification to their concerns, and stressed the medical necessity of providing plaintiff with all of their treatment recommendations, "without the need for further evaluation for necessity." (ATTACH-MENt-B). Here, where defendants' own contracted primary medical providers have deemed plaintiff's treatment medically necessary without the need for further evaluation for necessity,[3/] defendants' claims that good cause exist cannot withstand scrutiny. For example, no where in the defendants' pleadings and affidavits in opposition to plaintiff's initial application for preliminary relief did they put forth the requirement for a second gender evaluation and a complete psychological assessment of the plaintiff was warranted before providing the plaintiff with the prescribed treatment at issue. To the contrary, in their pleadings and affidavits, defendants' alleged they were withholding plaintiff's prescribed treatment "pending a 'peer review' by a Cynthia S. osborne, MSW, of the Fenway Clinic's clinical evaluations and treatment recommendations of the plaintiff's November 2004 evaluation." However, because the defendants' do not agree with the outcome of the December 21, 2005 meeting between UMCHP and the DOC's HSD or, UMCHP's October 17,

---

[3] In Kosilek vs. Maloney, 221 F.Supp.2d 156, 176 (D.Mass.2002), the (former) Commissioner of the DOC declared before this court that ..."if doctor's from the UMCHP who are engaged to provide mental health care to inmates decide to bring in a specialist to treat Kosilek, he would not interfere. Such medical judgments are what [he is] paying them for." Indeed, Maloney sincerely believes that he has "never in [his] career interfered with a doctor's order for treatment and has no intention of doing so in the future, with regard to Kosilek or anyone else." ID. Accord, 103 DOC Section 610.01("General Policy")(..."the contractual medical provider shall be responsible for making all decisions with respect to the type, timing and level of services needed by inmates covered by the contractual agreement with the Department of Correction"); 103 DOC Section 610.01(2)("Matters of medical, mental health and dental judgments are the sole province of the responsible physicians, physciatrist and dentists"). (ATTACHMENT-C). See Royce vs. Comm'r. of Corr., 390 Mass. 425, 456 N.E.2d 1127, 1128 (Mass.1983)("[O]nce an agency has seen fit to promulgate regulations, it must comply with those regulations").

2006 final decisions, defendants' only now put forth the requirement to conduct a second gender evaluation and a complete psychological assessment of the plaintiff. See, e.g., United States vs. Tierney, 760 F.2d 382, 388 (1st Cir.)("Having one's cake and eating it, too, is not in fashion in this circuit"), cert. denied, 474 U.S. 843 (1985); see also, e.g., Commonwealth vs. Poissant, 445 Mass. 558, 823 N.E.2d 350 356 (Mass.2005)("The Commonwealth cannot seek successive examinations by different experts until it obtains the opinion it desires").

Second, for the purpose of this argument, it is immaterial that the Director of the DOC's HSD still may have concerns regarding the thoroughness of the Fenway Clinic's evaluation of the plaintiff, and "believes" that a complete psychological assessment is warranted before implementing irreversible treatment. Here, it is the contractual medical provider that is solely responsible, per policy, "for making all decisions with respect to the type, timing and level of services needed by inmates, (ATTACHMENT-C, at §§610.01 ("General Policy") & 610.01(2)), not the Director of the DOC's HSD. (ATTACHMENT-C, at §601.01(1)-(15)). To the extent that defendants' believe that "a complete psychological assessment of the plaintiff is warranted, including the presence of Axis II personality disorders that 'may' play a role in the plaintiff's mental disorders," simply is not adequate to demonstrate the Rules requirements of "good cause." Neverthless, defendants' have already subjected plaintiff to the same psychological assessment, like their gender evaluation, seek to repeat. See PSYCHOLOGICAL ASSESSMENT REPORT, by: Dr. J. Tyler Carpenter, Ph.d, ABPP(dated: 10/4/97), [4] attached

---

[4] In lieu of this report being over nine (9) years old, it should be noted that the examiner, Dr. Carpenter not only has been plaintiff's primary mental health clinician for years, but is still employed with

-8-

to the <u>Memorandum of Law in Support of the Opposition of Defendants Kathleen M. Dennehy, Robert Murphy, Susan Martin, Steven Fairly and Gregory Hughes to Plaintiff's Request for a Preliminary Injunction</u>, marked as <u>ATTACHMENT</u>-3. (On file). Moreover, contrary to defendants' claim, plaintiff has <u>not</u> requested, <u>nor</u> been recommended for either "surgical castration" **of** "sex reassignment surgey." Here, defendants' repeatedly inject these assertions into their pleadings in support of their position of "withholding treatment before 'irreversible treatment' is implemeted," despite the fact that records clearly reveal that plaintiff has only requested and been recommended for "hormone therapy."

    Therefore, for the reasons stated above, defendants' Motion at hand should be <u>DENIED.</u> Accordingly, plaintiff requests the court issue a protective order, pursuant to Fed.R.Civ.P. Rule 26(c) based on the above and the ATTACHMENTS herewith, that plaintiff's treatment issues have been "determined to be medically necessary without the need for further evaluation for necessity." (Footnote <u>1</u>/, supra.).

---

FOOTNOTE <u>4</u>/ Continued:

the DOC. And, therefore, not only is highly qualified to conduct such an assessment, but would be in a better position to rule out any so-called personality disorders which may play a role in plaintiff's mental disorders personally counseling her for years, than an examiner who has never met the plaintiff and is employed in the State of Maryland. "[T]he right to a physical or mental examination under Rule 35(a) does not extent to allowing the moving party to name the physician; the naming of the physician is in the sound discretion of the court." <u>Leach vs. Greif Bros. Cooperative Corp.</u>, 2 F.R.D. 444 (DCMiss 1942).

-9-

Dated: 12/12/06 .          Respectfully submitted,

                           _____
                           Sandy J. Battista, #M-15930
                           Plaintiff/Pro-se
                           Mass. Treatment Center
                           30 Administration Rd.
                           Bridgewater, Mass. 02324


**CERTIFICATE OF SERVICE**

    I, Sandy J. Battista, hereby certify's that I have today served a true and accurate copy of the within filing on counsel of record for the defendants', by mail.


Dated: 12/12/06 .          _____
                           Sandy J. Battista, #M-15930
                           Plaintiff/Pro-se