UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SANDY JO BATTISTA,

    Plaintiff,

    v.                                            C. A. No. 05-11456-DPW

KATHLEEN M. DENNEHY, et al.,

    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANTS HAROLD W. CLARKE, KATHLEEN M. DENNEHY, ROBERT MURPHY, TERRE K. MARSHALL, AND SUSAN J. MARTIN FOR PARTIAL DISMISSAL OF THE FIRST AMENDED COMPLAINT

Defendants, Harold W. Clarke, Kathleen M. Dennehy, Robert Murphy, Terre K. Marshall and Susan J. Martin, through counsel, hereby submit this memorandum of law in support of their motion for partial dismissal of plaintiff's first amended complaint. Defendants move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss counts III-IX of the first amended complaint.

## INTRODUCTION

Plaintiff, Sandy Jo Battista ("plaintiff"), an individual presently under civil commitment to the Massachusetts Treatment Center ("Treatment Center") as a sexually dangerous person, pursuant to M.G.L. c. 123A, has brought this action alleging a denial of treatment for his alleged gender identity disorder ("GID"). The amended complaint seeks declaratory and injunctive relief and damages. The amended complaint alleges violation of plaintiff's rights under federal and state law and raises nine (9) counts: I) violation of substantive due process right to medical treatment under the Fourteenth Amendment of the United States Constitution (42 U.S.C. § 1983); II) violation of the Eighth Amendment of the United States Constitution (42 U.S.C. § 1983); III) violation of the Equal

Protection Clause of the Fourteenth Amendment of the United States Constitution (42 U.S.C. § 1983); IV) violation of arts.10 and 12 of the Massachusetts Declaration of Rights (M.G.L. c. 12, §§ 11H & 11I); V) violation of art.26 of the Massachusetts Declaration of Rights (M.G.L. c. 12, §§ 11H & 11I); VI) violation of art. 1 of the Massachusetts Declaration of Rights (M.G.L. c. 12, §§ 11H & 11I); VII) negligence; VIII) intentional inflection of emotional distress; and XI) negligent infliction of emotional distress.  Named as defendants are: Harold w. Clarke, Commissioner of the Massachusetts Department of Correction ("DOC"); Kathleen M. Dennehy, formerly DOC Commissioner; Robert Murphy, Treatment Center Superintendent; Terre K. Marshall, DOC Director of Health Services; and Susan J. Martin, formerly DOC Director of Health Services (collectively "DOC defendants").

## FACTUAL BACKGROUND

On January 27, 1983, Battista was found guilty of Rape of a Child, Kidnapping, and Robbery and sentenced to 12 to 20 years in prison.  On May 24, 2001, the district attorney petitioned for Battista's commitment as a sexually dangerous person ("SDP") to the Treatment Center. M.G.L. c. 123A, § 12(b).  On December 19, 2001, a justice of the Superior Court found probable cause to believe that Battista was an SDP, and ordered him temporarily committed to the Treatment Center for examination and diagnosis by two qualified examiners.  On April 10, 2002, based on the findings of the qualified examiners, who concluded that Battista is an SDP, the district attorney filed a petition for trial under M.G.L. c. 123A, § 14.  On May 15, 2003, a unanimous jury determined that Battista is a sexually dangerous person and committed Battista to the Treatment Center. M.G.L. c. 123A, § 14(d); Amended Complaint ("AC"), ¶ 4.

In September, 2001, Diana Ellaborn, a social worker specializing in gender disorders privately retained by plaintiff diagnosed plaintiff with GID and recommended treatment with female hormones. *Battista v. Dennehy*, C.A. No. 05-11456-DPW, 2006 WL 1581528 (Memorandum and

2

Order on Motion for Preliminary Injunction) (D. Mass. Mar. 22, 2006) * 2, n. 6. An evaluation by two gender specialists from the Fenway Clinic in August, 2004 diagnosed plaintiff with GID and recommended treatment with psychotherapy and hormones. *Id.* at *2. However, evaluations by a number of other qualified mental health professionals dating back to 1995 raised serious concerns regarding the validity of the GID diagnosis given plaintiff. *Id* at **2, 8-10. In particular, an October, 2005 review conducted by Cynthia Osborne, a social worker specializing in gender disorders, questioned the appropriateness of the Fenway clinic diagnosis. *Id.* at 10. As a result of the divergent opinions regarding the appropriateness of plaintiff's GID diagnosis and treatment recommendations, the DOC has proceeded with caution and plaintiff is presently receiving treatment with psychotherapy but not hormone therapy. *Id.* at 13.

## ARGUMENT

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true all well pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Toledo v. Sanchez*, 454 F.3d 24, 30 (1st Cir. 2006); *Cordero-Hernandez v. Hernandez-Ballesteros*, 449 F.3d 240, 244 n.3 (1st Cir. 2006). However, a "plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007) (citing *Panasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* Furthermore, in ruling on a motion under Rule 12(b)(6), the court must eschew reliance on "bald assertions, unsupportable conclusions, and opprobrious epithets." *Educadores*

*Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004).

Here, the causes of action raised in counts III-IX of the first amended complaint must be dismissed for failure to state a claim upon which relief may be granted.

**I.    PLAINTIFF IS UNABLE TO STATE A CLAIM FOR A VIOLATION OF THE EQUAL PROTECTION CLAUSE UNDER THE FOURTEENTH AMENDMENT.**

Count III of the amended complaint alleges that plaintiff's rights under the Equal Protection guarantees of the Fourteenth Amendment have been violated. A plaintiff alleging an equal protection violation must show that 1) he was selectively treated differently than others similarly situated; and 2) "that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato*, 60 F.3d 906, 909-910 (1st Cir. 1995); *Walker v. Exeter Region Coop. School Dist.*, 284 F.3d 42, 45 n. 4 (1st Cir. 2002) ("The underlying equal protection inquiry, … is whether different treatment of two separately classified groups is at least marginally *reasonable*.") (emphasis in original); *Battista v. Dennehy*, 2006 WL 1581528 *7. A plaintiff must show that a discriminatory purpose was the motivating factor in the unequal treatment. *See Washington v. Davis*, 426 U.S. 229 (1976); *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 16-17 (1st Cir. 1994), *cert. denied*, 514 U.S. 1108 (1995); *Beal v. Board of Selectmen of Hingham*, 419 Mass. 535, 545-46 (1995) (to prove equal protection violation, plaintiff must demonstrate that action was taken with discriminatory intent). *See also, Washington v. Harper*, 494 U.S. 210, 233 (1990) (A state's interest in maintaining safety and security justifies interference with an inmate's fundamental rights as long as the interference reasonably furthers this goal.).

Plaintiff alleges, in conclusory fashion, that he has been treated differently from other inmates diagnosed with GID, female prisoners, and criminally and civilly committed individuals who are not

diagnosed with GID. Amended Complaint ("AC"), ¶¶ 75-77. Specifically, plaintiff has alleged that he has been treated differently from other inmates diagnosed with GID who are serving a criminal sentence where they are provided with hormone therapy and access to female canteen items. AC ¶ 75. Plaintiff further alleges that he is treated differently from female prisoners who have access to different products and clothing in the DOC canteen. AC ¶ 76. Plaintiff also alleges that he is treated differently from state criminal inmates and civilly committed individuals with a non-GID diagnosis with regard to experiencing unduly delays or withholding of medical treatment. AC ¶ 77.

Here, plaintiff's claim under the Equal Protection Clause fails to satisfy the criteria set out in *Rabinovitz, supra.* First, plaintiff is unable to show that he has been singled out for selective and unequal treatment among transsexuals, female inmates, and male criminally convicted inmates and civilly committed individuals not diagnosed with GID. Plaintiff is unable to demonstrate that the other groups identified, *i.e.*, inmates under criminal sentences who are diagnosed with GID, female prisoners and male criminally convicted inmates and civilly committed individuals not diagnosed with GID, are similarly situated to plaintiff. Plaintiff's allegations show, at best, that prison officials and medical staff have made different decisions with respect to plaintiff than were made for other inmates under criminal sentences who are diagnosed with GID, female prisoners and male criminally convicted inmates and civilly committed individuals not diagnosed with GID. *See Battista v. Dennehy*, 2006 WL 1581528 * 7. Second, plaintiff able to show that the reason he has not received treatment with female hormones is due to his membership in a suspect group, his exercise of a "fundamental right," or because defendants are motivated by bad faith or a malicious intent to injure him. *See Rubinovitz, supra* at 909. Plaintiff is unable to demonstrate that the alleged differences in treatment among inmates with GID, female prisoners and male criminally convicted inmates and civilly committed individuals not diagnosed with GID are based on a discriminatory animus on the part of the

5

defendants against plaintiff. To the contrary, allegations contained in the amended complaint acknowledge that the decision to delay treating plaintiff with female hormones is based on concerns raised by defendants regarding the "appropriateness and necessity" of the treatment and "potential security contraindications," as well as concerns that UMCHP's treatment recommendations for plaintiff lack clarity. AC ¶¶ 45, 46, 48, 65, 66.

In the absence of any facts showing that plaintiff has been subjected to selective unequal treatment or that the treatment presently available to plaintiff is based on a discriminatory animus or a bad faith or a malicious intent to injure him on the part of the defendants, plaintiff's equal protection claim under 42 U.S.C. § 1983 must be dismissed.[1]/

## II.   DEFENDANTS ARE IMMUNE FROM DAMAGES IN THEIR OFFICIAL CAPACITIES UNDER 42 U.S.C. § 1983.

Plaintiff's claims against defendants, in their official capacities, must fail because a State, or in this case, a State agency and its officials, are not "persons" within the meaning of 42 U.S.C. §1983. As the Supreme Court has ruled: "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants against a State for alleged deprivations of civil liberties." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *Hafer v. Melo*, 502 U.S. 21 (1991). Accordingly, the claim for damages brought against the defendants in their official capacities under 42 U.S.C. §1983 must be dismissed.

---

1  Similarly, plaintiff's equal protection claim under the State Constitution, count VI of the amended complaint, must be dismissed where Massachusetts courts have utilized the same standard of review for equal protection claims brought under art. 1 of the Massachusetts Declaration of Rights as applied under the Fourteenth Amendment. *See Murphy v. Dept. of Correction,* 429 Mass. 736, 739 n. 3 (1999); *Dickerson v. Attorney General*, 396 Mass. 740, 743 (1986) ("For purposes of equal protection analysis, our standard of review under the cognate provisions of the Massachusetts Declaration of Rights is the same as under the Fourteenth Amendment to Federal Constitution.") (citing *Commonwealth v. Franklin Fruit Co.*, 388 Mass. 228, 235 (1983).

6

**III. PLAINTIFF IS UNABLE TO STATE CLAIMS FOR VIOLATIONS OF HIS RIGHTS UNDER THE STATE CONSTITUTION.**

Counts IV, V, and VI of the amended complaint allege violations of plaintiff's civil rights under the Massachusetts Declaration of Rights. However, these claims must be dismissed where plaintiff is unable to obtain the relief requested directly under the State Constitution or under the state civil rights act, M.G.L. c. 12, § 11I.

In *Martino v. Hogan*, 37 Mass. App. Ct. 710, 720-21 (1994), the Massachusetts Appeals Court addressed the issue of whether a cause of action alleging a violation of a provision of the State Constitution could be accorded relief directly under the State Constitution. In affirming the dismissal of a former inmate's claim for damages under art. 12 of the Massachusetts Declaration of Rights, the *Martino* Court held that there was no authority upon which to base a damages claim directly upon the Constitution's Declaration of Rights. *Id*. at 720.[2]/ The *Martino* Court stated that the existence of the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, §§ 11H & 11I appeared "to occupy the field," similar to that of 42 U.S.C. § 1983 in the context of alleged violations of the Federal Constitution, and preclude a claim for equitable relief or damages directly under the State Constitution. *Id*. [3]/

---

2 The *Martino* court also indicated that even if a direct action for damages under the Declaration of Rights were available, the defendant would have been entitled to qualified immunity since the legal theory has not been clearly established. *Id*. at 720.

3 M.G.L., c. 12, § 11I, entitled, "Violations of constitutional rights; civil actions by aggrieved persons; costs and fees," provides:

> Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action

Accordingly, in order to maintain a claim for a violation of the Massachusetts Declaration of Rights, a plaintiff must demonstrate that the defendant interfered with his civil rights in violation of the MCRA.

> To establish a claim under the [MCRA], the plaintiffs must prove that (1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'

*Swanset Development Corp. v. Tauton*, 423 Mass. 390, 395 (1996). The Massachusetts Supreme Judicial Court has held that the state civil rights act does not create a vast constitutional tort, stating that "the legislature has explicitly limited this remedy to situations where the deprivation of secured rights occurs by 'threats, intimidation or coercion.'" *Bell v. Mazza*, 394 Mass. 16, 18 (1985). *See also Deas v. Dempsey*, 403 Mass. 468 (1988); *Appleton v. Hudson*, 397 Mass. 312, 347 (1988); *Hobson v. McLean Hospital Corp.*, 402 Mass. 413, 417 (1988).

The "threats, intimidation or coercion" required for a violation of the MCRA are defined as:

> A 'threat' … involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. 'Intimidation' involves putting fear for the purpose of compelling or determining conduct. … [C]oercion … [is] 'the application to another of such force, either physical or moral, as to constrain him not to do against his will something he would not otherwise have done.'

*Planned Parenthood League of Mass. v. Blake*, 417 Mass. 467, 474, *cert. denied* 513 U.S. 868 (1994). "There must also be evidence of 'actual or potential physical confrontations involving a threat of harm,' though the confrontation may involve third persons and the threat of harm need not be directed at the plaintiff." *Sarvis v. Boston Safe Deposit and Trust Co.,* 47 Mass. App. Ct. 86, 91-92 (1999) (citing *Planned Parenthood*, *supra* at 474 and *Redgrave v. Boston Symphony Orchestra*, 399 Mass. 93, 100-101 (1987)).

---

authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court.

In the instant case, plaintiff's amended complaint fails to set forth any facts showing a violation of his civil rights involving the use of "threats, intimidation or coercion" on the part of any of the defendants. In the absence of any facts demonstrating a civil rights violation involving "threats, intimidation or coercion" there can be no violation of the MCRA. *Longval v. Commissioner of Correction*, 404 Mass. 325, 333 (1989) (A direct violation of a person's rights does not by itself involve threats, intimidation and coercion and thus does not implicate the Act.); *Layne v. Superintendent, MCI Cedar-Junction*, 406 Mass. 156, 158 (1989) (evidence of 'threats, intimidation or coercion' are an essential element to a claim under the state civil rights act); *Bally v. Northeastern University*, 403 Mass. 713, 719-720 (1989).

Accordingly, in light of plaintiff's failure to state a claim under M.G.L. c. 12, §§ 11H & 11I, the counts in the amended complaint alleging a violation of plaintiff's rights under the Massachusetts Declaration of Rights must be dismissed.

In addition, the defendants, in their official capacities, are not subject to a suit under the MCRA. In *Commonwealth v. ELM Medical Laboratories, Inc.*, 33 Mass. App. Ct. 71, 76-77 (1992), the Supreme Judicial Court, upon review of the legislative history of the state civil rights act, concluded that "there is no reason to believe that the Legislature intended, by the enactment of M.G.L. c. 12, §§ 11H & 11I, to waive sovereign immunity." The Court also held that neither the Commonwealth nor state agencies are "persons" under the statute. *Id.* at 76 n.9. Plaintiff's claims against defendants under the state civil rights act should be dismissed.

**IV. PLAINTIFF WILL NOT SUCCEED ON CLAIMS FOR NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.**

Counts VII and IX of the amended complaint allege that the defendants' failure to provided him with the hormone treatment constitutes both negligence and the negligent infliction of emotional distress. These claims must be dismissed.

Where the defendants are public employees and plaintiff seek to hold them liable for alleged injuries caused by their alleged negligent or wrongful conduct while acting within the scope of their public offices or employment, the claims alleging negligence fall squarely under the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, *et seq*.

Plaintiff's claims alleging negligence are barred under the MTCA. First, this court lacks jurisdiction to hear claims under the MTCA. The Eleventh Amendment bars suit against a state by its own citizens unless the state has waived its sovereign immunity. *Will v. Michigan Dept. of State Police*, *supra*; *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) (the Supreme Court has consistently held that the Eleventh Amendment precludes such suits in the absence of the state's consent to suit). The MTCA provides a limited waiver of the Commonwealth's sovereign immunity. *See* M.G.L. c. 258, §2. Through language in the MTCA, the Commonwealth expressly consents to suit only in its own courts:

> All civil actions brought against a public employer on a claim for damages cognizable under this chapter *shall* be brought in the county where the claimant resides or in the county where such public employer is situated except that in the case of the Commonwealth such civil actions shall be brought in the county where the claimant resides or in Suffolk county. The superior court *shall* have jurisdiction of all civil actions brought against a public employer.

M.G.L. c. 258, § 3 (emphasis added). The Supreme Judicial Court has expressly held that the MTCA does not waive the Commonwealth's Eleventh Amendment immunity from suit in federal court. *See Irwin v. Commissioner of the Dept. of Youth Services*, 388 Mass. 810, 819-21 (1983). Federal courts are in agreement. *See Rivera v. Commonwealth*, 16 F. Supp.2d 84, 87 (D. Mass. 1998) (federal courts lack jurisdiction over MTCA claim where the Commonwealth has not waived sovereign immunity); *Marsolais v. Commonwealth*, 2002 WL 373305 (D. Mass. Mar. 7, 2002) (slip op.).

Second, under the MTCA, public employees may not be held liable for alleged negligent

actions conducted within the scope of their public employment. In relevant part, M.G.L. c. 258, § 2 provides:

> no ... public employee ... shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment....

It is undisputed that the defendants are public employees and that the alleged negligent conduct took place within the scope of their public offices or employment. Accordingly, the defendants cannot be held liable for their alleged negligent conduct under the MTCA. The negligence claims raised in counts VII and IX must be dismissed.

### V. PLAINTIFF IS UNABLE TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Count VIII of the amended complaint alleges that defendants engaged in the intentional infliction of emotional distress upon plaintiff. To state a claim for intentional infliction of emotional distress under Massachusetts law, a plaintiff must demonstrate that: 1) the actor must have intended or should have known that the harm was likely to result; 2) the conduct was "extreme and outrageous" and "was beyond all possible bounds of decency" and was "utterly intolerable in a civilized community;" 3) the actions of the defendant must have cause plaintiff's emotional distress; and 4) the emotional distress suffered by plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it." *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976): *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997). The Supreme Judicial Court has set the bar high for establishing a claim of intentional infliction of emotional distress:

> We warned in *Agis*, however, that 'the door to recovery [for a claim of intentional infliction of emotional distress] should be opened but narrowly and with due caution.' A principal bulwark against excessively broad recovery is the requirement that the defendant must have engaged in 'extreme and outrageous' conduct. Thus, liability cannot be predicted upon 'mere insults, indignities, threats annoyances,

> petty oppressions, or other trivialities,' nor even is it enough 'that the defendant has acted with an intent which is torturous or even criminal, or that he intended to inflict emotional distress or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort; rather, '[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987) (citations omitted).

In the case at bar, it is clear that plaintiff will not succeed on his claim for the tort of intentional infliction of emotional distress against the DOC defendants where he fails to set out any facts or circumstances regarding these defendants which rise to the level of extreme, outrageous and utterly intolerable behavior. Certainly, administrative actions taken in response to a dispute among mental health professionals regarding a choice between available treatments does not rise to the level of conduct that was "extreme and outrageous" and "beyond all bounds of decency" and "utterly intolerable in a civilized society." *Agis, supra*; *Battista v. Dennehy*, 2006 WL 1581528 **13-14. In the total absence of facts in the amended complaint showing that any defendant engaged in the "utterly intolerable" behavior necessary to support a claim of intentional infliction of emotional distress, this claim must be dismissed.

## VI.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

The doctrine of qualified immunity protects government officials from the burdens of defending lawsuits which may inhibit them from properly exercising their powers. *Knight v. Mills*, 836 F.2d 659 (1st Cir. 1987) (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974)). Government officials performing discretionary functions are shielded with a qualified immunity "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged

to have violated." *Anderson v. Creighton*, 483 U.S. 635 (1987); *Davis v. Scherer*, 468 U.S. 182 (1984) ("officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages"); *Harlow v. Fitzgerald*, 457 U.S. 810 (1982); *Mitchell v. Forsyth*, 472 U.S. 511 (1985).

A basic principle of qualified immunity is the requirement that a court promptly resolve any claim of qualified immunity raised by a state officer. The Supreme Court has stated:

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' The privilege is 'an *immunity from suit* rather than a defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' *Ibid.* As a result, 'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.' (Emphasis in original) (Citations omitted).

*Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). *See also Crawford-El v. Britton*, 523 U.S. 574, 590 n. 12 (1998) (there is a "strong public interest in protecting public officials from the costs associated with the defense of damages actions," including the "expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office"). The *Saucier* Court found that the Court of Appeals' denial of qualified immunity based on the existence of disputed material facts had the effect of undermining the goal of qualified immunity to "avoid excessive disruption of government and permit the resolution of many insubstantial claims." *Saucier*, *supra* at 202, *quoting Harlow v. Fitzgerald*, *supra* at 818. *See also Brum v. Town of Dartmouth*, 428 Mass. 684, 688 (1999) ("This court has noted the importance of 'determining immunity issues early if immunity is to serve one of its primary purposes: to protect public officials from harassing litigation) (*quoting Duarte v. Healy*, 405 Mass. 43, 47 (1989)); *Guiterrez v. Mass.*

13

*Bay Trans. Auth.,* 437 Mass. 396, 403 (2002) (*citing Saucier, supra*, in holding that the issue qualified immunity must be resolved at the "earliest possible stage in [the] litigation").

The analysis of a state actor's claim of qualified immunity requires a court to utilize a three-part test. *Saucier, supra*; *Hope v. Pelzer*, 536 U.S. 730 (2002); *Suboh v. District Attorney Office of Suffolk District*, 298 F.3d 81 (1st Cir. 2002). The initial inquiry is whether a plaintiff's allegations, if true, establish a constitutional violation. The second prong concerns whether the right was clearly established at the time of the alleged violation. The third prong is whether a reasonable actor, similarly situated, would have understood that his conduct violated that clearly established right. *See Saucier*, *supra* at 201; *Hope*, *supra* at 740; *Suboh*, *supra* at 89-90; *Hatch v. Department of Children, Youth & Their Families*, 274 F.3d 12, 20 (1st Cir. 2001). The constitutional right must be asserted with sufficient particularity. *Anderson*, *supra* at 639 (courts warned against using generalized definitions of constitutional rights in qualified immunity inquiry); *Suboh*, *supra* at 90. If plaintiff's allegations establish a constitutional violation, it must then be determined whether the constitutional right was clearly established at the time of the defendant's actions to ensure that the state actor had "fair warning" that the alleged action was unconstitutional. *See Hope*, *supra* at 740 (officers sued in a civil action for damages have the same right to fair notice as do defendants charged with a criminal offense); *Saucier*, *supra* at 202 ("The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."); *Suboh*, *supra* at 90. The Supreme Court has determined that the inquiry into whether the constitutional right was clearly established must take into consideration the particular circumstances at issue in the case. *Saucier*, *supra* at 201; *Suboh*, *supra* at 93.

Next, if a plaintiff shows that the constitutional right at issue was clearly established, the qualified immunity inquiry focuses on whether an objectively reasonable official in defendant's

14

position would have understood that the alleged action violated plaintiff's rights. *Saucier*, *supra* at 208 ("The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards."). Qualified immunity is available to a state actor who violates a clearly established right if he acted under the mistaken but reasonable belief that his actions were lawful. *See Malley v. Briggs*, 475 U.S. 335 (1986) (qualified immunity leaves "ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law"); *Suboh*, *supra* at 95; *Berthiaume v. Caron*, 142 F.3d 12, 15 (1st Cir. 1998). This is consistent with the purpose of qualified immunity to avoid chilling official action by exposing officials to personal liability for good faith judgments. *Harlow*, 457 U.S. at 814.

In the case at bar, it is clear that the defendants have not violated any of plaintiff's clearly established constitutional rights with regard to the provision of medical treatment for his alleged gender disorder. First, it is not clearly established disagreements regarding the type and timing of medical care of an inmate or civilly committed sex offender violates the Eighth Amendment or substantive due process. The standard applied under the Eighth Amendment in this Circuit is that inmates should receive adequate medical care based on the exercise of professional judgment. *United States v. DeCologero*, 821 F.2d 39, 44 (1st Cir. 1987). Disagreements as to the appropriate course of treatment do not state a constitutional violation, even if they present a claim of negligence. *DesRosiers v. Moran*, 949 F.2d 15, 20 (1st Cir. 1991); *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993) ("The courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment..."); *Layne v. Vinzant*, 657 F.2d 468, 474 (1st Cir. 1981) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments..."); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987).

Similarly, the First Circuit, addressing a constitutional challenge to the conditions of the Treatment Center, held that substantive due process under the Fourteenth Amendment "requir[es] conditions that do not fall below the minimum standards of civilized decency." *Cameron v. Tomes*, 990 F.2d 14, 19 (1st Cir. 1993), citing to *Rochin v. California*, 342 U.S. 165 (1952). In discussing the Supreme Court's decision in *Youngberg v. Romeo*, 457 U.S. 307 (1982), the *Cameron* Court questioned whether *Youngberg* actually established a constitutional right to treatment and declined to apply the *Youngberg* decision to the case arising out of the Treatment Center, citing to its earlier decision in *Langton v. Johnson*, 928 F.2d 1206, 1217 (1st Cir. 1991). However, the *Cameron* Court provided guidance regarding meeting the treatment needs of those confined to the Treatment Center:

> Thus when it comes to appraising the judgments of the administrators, it does not follow that they are bound to do what the doctors say is best for Cameron even if the doctors are unanimous. The administrators are responsible to the state and to the public for making professional judgments of their own, encompassing institutional concerns as well as individual welfare. Nothing in the Constitution mechanically gives controlling weight to one set of professional judgments. Indeed, when it comes to constitutional rights, none of the professionals has the last word. Professional judgment, as the Supreme Court has explained, creates only a 'presumption' of correctness; welcome or not, the final responsibility belongs to the courts. *See Youngberg, supra* at 323.

*Cameron v. Tomes*, 990 F.2d at 20-22.

Of particular import to the constitutional issues raised in the instant case is the decision of Chief Judge Wolf in *Kosilek v. Maloney*, 221 F.Supp.2d 156 (D. Mass. 2002). In *Kosilek*, an inmate diagnosed with GID alleged that the failure to provide him with hormone therapy violated his rights under the Eighth Amendment. With regard to medical treatment for GID, the court stated:

> A gender disorder is not, however, necessarily a serious medical need for which the Eighth Amendment requires treatment. As with other mental illnesses, gender identity disorders have differing degrees of severity. As the Standards of Care explain, some individuals with gender identity disorders manage to find their own comfortable, effective ways of living that do not require

16

>psychotherapy, hormone therapy, a real life experience, or sex reassignment surgery. (Citing *Farmer v. Moritsugu,* 163 F.3d 610, 615 (D.C. Cir. 1998)).

*Kosilek, supra* at 184. The court determined that the failure to provide Kosilek with hormone therapy did not violate the Eighth Amendment where Commissioner Maloney did not possess the requisite state of mind. *Kosilek*, *supra* at 161, 191. However, the court found that the DOC's blanket policy prohibiting the administration of hormones to GID inmates who had not received them prior to incarceration constituted inadequate medical care:

>However, decisions as to whether psychotherapy, hormones, and/or sex reassignment surgery are necessary to treat Kosilek adequately must be based on an 'individualized medical evaluation' of Kosilek, rather than as a 'result of a blanket rule.'… Thus, the court expects that Maloney will follow the DOC's usual policy and practice of allowing medical professionals to assess what is necessary to treat Kosilek.

*Id.* at 193. Accordingly, *Kosilek* held that adequate medical care for inmates must be based on individual professional evaluations. *Id.* at 193-194; *Battista v. Dennehy*, 2006 WL 1581528 * 12.

Here, plaintiff is unable to demonstrate that the law has been clearly established such that the defendants had "fair warning" that taking a cautious approach to providing medical treatment for plaintiff in light of disputes between mental health professionals regarding plaintiff's diagnosis and treatment for GID would violates plaintiff's constitutional rights. Where plaintiff has been provided with numerous assessments from a variety of mental health professionals with regard to GID and psychological disorders and there exist disagreements between mental health professionals with regard to diagnosis and treatment, defendants' alleged conduct has not violated clearly established laws. Further, plaintiff is unable to show that the defendants would have reasonably understood that their actions with regard to plaintiff's treatment for GID violated clearly established rights. Therefore, defendants are entitled to qualified immunity for the claims raised under state and federal laws. *See Saucier*, 533 U.S. at 201; *Hope*, 536 U.S. at 740; *Suboh*, 298 F.3d at 89-90.

## CONCLUSION

For the foregoing reasons, defendants, Harold W. Clarke, Kathleen M. Dennehy, Robert Murphy, Terre K. Marshall, and Susan J. Martin, request that counts III-IX of the amended complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: January 28, 2008               Respectfully submitted,

NANCY ANKERS WHITE
Special Assistant Attorney General


/s/ Richard C. McFarland
Richard C. McFarland, BBO# 542278
Joan T. Kennedy, BBO #554935
Legal Division
Department of Correction
70 Franklin Street, Suite 600
Boston, MA   02202
(617) 727-3300   ext. 132


## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on 01/28/08.

/s/ Richard C. McFarland
Richard C. McFarland