## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SANDY J. BATTISTA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 05-11456-DPW |
| HAROLD W. CLARKE, | ) |
| KATHLEEN M. DENNEHY, | ) **ORAL** |
| ROBERT MURPHY, | ) **ARGUMENT** |
| TERRE K. MARSHALL, and | ) **REQUESTED** |
| SUSAN J. MARTIN, in their official and individual | ) |
| capacities; | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26(c), Plaintiff Sandy J. Battista ("Ms. Battista") respectfully requests a protective order limiting the scope of the discovery propounded by defendants to matters relating to the Massachusetts Department of Corrections' (the "DOC") unilateral decision to withhold indefinitely Ms. Battista's treatment for Gender Identity Disorder ("GID").

Ms. Battista's request for relief is simple: that DOC officials be ordered to provide the GID treatment that was prescribed to her by DOC doctors and that has been withheld without explanation for almost three years. When DOC doctors first prescribed this treatment in 2004, DOC officials informed Ms. Battista that it would not be immediately administered because of the need for a "security review." It was only after Ms. Battista filed this lawsuit almost a year later that the DOC retained an expert witness to try to second guess the diagnosis and recommendations of its own providers. In the first instance, the DOC's own regulations do not allow DOC officials to challenge medical decisions and treatment recommendations.

Accordingly, the DOC's belated attempt to question Ms. Battista's diagnosis is outside of its authority. Moreover, even if it were appropriate for the DOC to conduct discovery aimed at challenging the diagnosis, its requests go far beyond the boundaries of potentially relevant information.

Defendants seek wholesale discovery of highly sensitive information from Ms. Battista's distant past that is irrelevant to the issues in dispute.[1] For example, defendants request, in part, a comprehensive medical and psychological history dating back to Ms. Battista's birth, Ms. Battista's juvenile and military records, and an explanation of the deaths of Ms. Battista's parents. These demands are made despite the fact that Ms. Battista has been in DOC custody for the last 25 years – the entire period of time even possibly relevant to this action. At best, defendants' requests are irrelevant, overbroad and unduly invasive of Ms. Battista's privacy. At worst, they are a thinly veiled, malicious attempt to harass and intimidate Ms. Battista and to gather information to use to disparage her character or for other improper purpose.

Defendants have refused to narrow the scope of the discovery at issue or to articulate any reasonably relevant grounds upon which the disputed requests are based.[2] Thus, Ms. Battista seeks this Court's intervention in order to prevent defendants from pursuing a fishing expedition into her distant past. In particular, Ms. Battista asks that this Court enter a protective order prohibiting defendants from (a) discovery of her juvenile records; (b) inquiring at her deposition into the details of her childhood except as it relates to her memory of behaviors noted in the various medical records as associated with GID or symptoms otherwise relevant to her GID; (c)

---

[1] The interrogatories and document requests at issue are appended hereto as Exhibits A and B. Discovery relating to matters not subject to objection has been provided to defendants.

[2] Ms. Battista has told defendants that their requests either obligate her to undertake an exhaustive investigation to locate documents she does not have, or to authorize defendants to go on an unfettered fishing expedition. In response, defendants assert that they merely wish for Ms. Battista to ascertain whether such documents exist. Whether or not that inquiry would be unduly burdensome, defendants' suggestion misses the point: even if available, these documents are flatly irrelevant.

obtaining the blanket releases demanded in its Request for Production of Documents; and (d) obligating Ms. Battista to gather and produce records of medical and mental health treatment prior to incarceration.    In addition, Ms. Battista requests that the protective order require defendants to extend the simple courtesy of respecting her preference for being referred to as a female.

I.    **FACTUAL BACKGROUND**

A.    **DOC Regulations**

The DOC contracts with private vendors to provide medical, dental and mental health services to criminally and civilly committed persons within DOC custody.  Health care delivery within each facility is a mutual concern of the DOC and the contractual clinical providers. Pursuant to DOC regulations, the DOC's private medical contractor has full responsibility for all decisions related to the type, timing and level of medical and mental health services provided to inmates.  The relevant DOC regulation states:

> In concert with the Division of Health Services, the contractual medical provider shall be <u>solely</u> responsible for making <u>all decisions</u> with respect to the type, timing and level of services needed by inmates covered under the contractual agreement with the Department of Correction... <u>Matters of medical, mental health and dental judgment are the sole province of the responsible physicians, psychiatrists or dentists</u>.

103 DOC 610.1 (emphasis added).

While health care providers are charged with ensuring that the delivery of health care is in accordance with the security requirements of the facility as determined by the superintendent, "[m]atters of clinical judgment are the <u>sole province</u> of the licensed health care professionals." *Id*. (emphasis added).

At all times relevant to this action, the University of Massachusetts Correctional Health Program ("UMCHP") was under contract with the DOC to provide all inmate medical and mental health services, including those of Ms. Battista. Therefore, under DOC regulations, UMCHP has the sole authority to diagnose and set medical and mental health treatment plans for Ms. Battista and the DOC has no right to second guess the UMCHP's decisions except with regard to security. *See* 103 DOC 610.1, 103 DOC 601.02. Thus while the DOC's original decision to withhold Ms. Battista's treatment pending a "security" review initially may have been permissible under DOC regulations, its subsequent refusal to engage in that "security" review for almost three years is not. Likewise, under its own regulations, the DOC explicitly does not have the right to challenge Ms. Battista's diagnosis, and therefore defendants' current justification for denying Ms. Battista treatment is without merit.

## B.    Ms. Battista's Medical History

Ms. Battista has been civilly committed at the Massachusetts Treatment Center in Bridgewater since 2001. Prior to her civil commitment, Ms. Battista was an inmate in the custody of the DOC beginning in 1983. Accordingly, with the exception of one outside consultation with a GID expert, all of Ms. Battista's medical and mental health care since 1983 has been supplied by DOC providers.

Though she initially sought treatment for GID in 1997, Ms. Battista was denied treatment because she had not yet been diagnosed with the disorder by a qualified professional. In 2001, Ms. Battista independently retained an expert who diagnosed her with GID and recommended that she be treated in accordance with the Harry Benjamin Standards of Care.[3] In 2004, DOC doctors confirmed Ms. Battista's GID diagnosis and prescribed her a GID treatment plan that

includes (i) psychotherapy; (ii) hormone therapy; (iii) laser hair removal; and (iv) access to feminine clothing and products from the DOC's canteen. Ms. Battista's prescription for hormone therapy was subsequently filled by a DOC pharmacist and sent to the Massachusetts Treatment Center. Nevertheless, in 2005, DOC officials – none of whom are medical professionals – unilaterally decided to withhold Ms. Battista's treatment pending a "security review." Almost three years later, this "security review" still has not taken place. Ms. Battista has received no real treatment for her GID despite the fact that if left untreated, GID can cause severe depression and anxiety, and interfere with an individual's ability to function in the world, leading to further isolation, self-abuse and even suicide. The DOC's denial of Ms. Battista's treatment has been met with repeated and forceful objections by the DOC's contracted medical providers.

### C.    Ms. Battista's GID Diagnosis

Ms. Battista has been diagnosed with Gender Identity Disorder by two separate experts.[4] GID is recognized by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") and is identified by "[a] strong persistent cross-gender identification" and a "[p]ersistent discomfort with his or her sex or sense of inappropriateness in the gender role of that sex." Except in the case of GID In Children (DSM-IV 302.6), a GID diagnosis does not depend on childhood symptoms and adult onset of GID is recognized. Thus,

---

[3] The Harry Benjamin Standards of Care articulate the professional consensus about the psychiatric, psychological, medical and surgical management of gender identity disorders, and are widely accepted by therapists all over the world

[4] In 2001, Ms. Battista retained Diane Ellaborn, LICSW to evaluate her for GID  Ms Ellaborn's evaluation concluded: "Sandy Jo Battista clearly meets the criteria for Gender Identity Disorder NOS  This condition is considered both psychological and medical in nature  While incarcerated [s]he has been treated medically for [her] intersex condition and likewise should be allowed treatment psychologically and medically for [her] gender condition  The benefit of such condition is two-fold, it will help resolve Sandy Jo Battista's persistent gender dysphoria and lower [her] risk of reoffending " In 2004, the UMCHP, acting on behalf of the DOC, enlisted Fenway Community Heath to assess Ms  Battista's GID diagnosis and determine a treatment plan  The Fenway report concluded that Ms  Battista "fit the diagnosis for Gender Identity Disorder, NOS" and that her GID NOS should be "addressed through hormone administration and ongoing psychotherapy to support the adjustment of the transition the hormones will bring "

even if it were appropriate for the DOC to conduct discovery aimed at challenging Ms. Battista's diagnosis, defendants' requests for information from Ms. Battista's childhood go far beyond the boundaries of potentially relevant information. The details of Ms. Battista's childhood are not essential to her GID diagnosis and wholesale discovery of such information is not justified.

### D.    Ms. Battista's Traumatic Childhood

Ms. Battista had an extremely traumatic childhood riddled with abuse and neglect of which she has very little memory. Defendants are no doubt generally aware of this painful history, and indeed aware of most if not all of the potentially pertinent details, as they already possess Ms. Battista's mental health/counseling records created over the past 25 years. These records detail, for example, Ms. Battista's spotted memory of her father's involvement in the death of her mother, and the abuse Ms. Battista suffered at the hands of her father and maternal grandmother. It is not surprising that Ms. Battista does not recall much of her childhood considering the trauma she suffered, the fact that she was moved around constantly during her youth, and that she has no current access to collateral sources of this information. Thus, as a practical matter, most of the answers to defendant's irrelevant inquiries into Ms. Battista's childhood are unobtainable.

### II.    ARGUMENT

Defendants' interrogatories and document requests are impermissibly broad and seek information that is irrelevant to either of the DOC's pretextual justifications for denying Ms. Battista treatment - first, that a "security review" was necessary, and second, that Ms. Battista is incorrectly diagnosed with GID. Ms. Battista asks this Court to issue an order protecting her from defendants' unduly invasive discovery which serves no purpose other than to confuse the relevant issues and to harass and intimidate.

## A. Ms. Battista Can Demonstrate Good Cause for A Protective Order

Under Fed. R. Civ. P. 26(c), a court may exercise its discretion to enter a protective order to preclude certain discovery and protect a party from annoyance, embarrassment, oppression, and undue burden or expense. Protective orders can require, among other things, "that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." Fed. R. Civ. P. 26(c)(4). In assessing whether good cause exists for a protective order, courts generally balance the harm to defendant against the relevance and necessity of the information. *Multi-Core, Inc. v. Southern Water Treatment Co.*, 139 F.R.D. 262 (D. Mass. 1991) (citing, 8 C. Wright & A. Miller, Federal Practice and Procedure § 2043 (1970)). Here, as the party seeking a protective order, Ms. Battista bears and can meet her burden of demonstrating "good cause." *Multi-Core, Inc.*, 139 F.R.D. 262, 263-264 (citing, *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986) (discussion of good cause standard under Rule 26(c)) and *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir. 1988), cert. denied, 488 U.S. (1989) (burden on moving party to show good cause)). Defendants' discovery requests are irrelevant, unnecessary and serve only to harass and intimidate Ms. Battista.

First, Fed. R. Civ. P. 26(b)(1) limits discovery to matters which are "relevant" to a claim or defense or reasonably calculated to lead to the discovery of admissible evidence. Even though courts construe relevance "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case," the scope of discovery is not without limits and "discovery is not a fishing expedition." *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 742 (Fed. Cir. 1987) (citing *Oppenheimer Fund*, 437 U.S. 340, 351-52 (U.S. 1978), *Gibbons v. Food Lion*, No. 98-1197-CIV-T-23F, 1999 WL 33226474, at *1 (M.D. Fla. Feb. 19, 1999)). Here, defendants' discovery requests are irrelevant and unnecessary

for defending either of the DOC's purported justifications for denying Ms. Battista treatment. *Multi-Core, Inc*, 139 F.R.D. 262; *see also Gagne v. Reddy*, 104 F.R.D. 454 (D.Mass. 1984).

Ms. Battista's juvenile records, childhood medical and mental health records, and elementary school report cards, for example, have no relationship to any DOC "security" concerns and are entirely unrelated to Ms. Battista's GID diagnosis. Moreover, defendants' discovery is an obvious fishing expedition aimed at inappropriately gathering information to attack Ms. Battista's character in either the current lawsuit or in future evaluations of her continued commitment to the MTC.

Finally, there can be no doubt that the burden on Ms. Battista, should she be forced to respond to defendants' discovery, far outweighs the DOC's voyeuristic interest in learning of her traumatic past. If Ms. Battista is required to respond to the discovery at issue she will be forced to needlessly relive traumatic memories and to provide defendants unlimited access to sensitive and confidential information that has nothing to do with this case. On the other hand, if defendants are denied this discovery, they will still possess all of Ms. Battista's medical and mental health records from the past 25 years and will merely be prevented from gathering information to disparage Ms. Battista's character and muddy the relevant issues.

### B.    Defendants' Discovery Is Irrelevant To The DOC's Initial Grounds For Withholding Ms. Battista's GID Treatment

The DOC's initial justification for withholding Ms. Battista's GID treatment was that it needed to perform a "security review." Though the DOC did not volunteer information regarding any particular security concerns, it is reasonable to assume that a DOC security review would take into account whether the GID treatment would cause Ms. Battista to behave in a way that would threaten security at the MTC and whether Ms. Battista's safety in the general population would be at risk. Defendants' discovery requests are entirely irrelevant to such

security considerations. Instead they are directed at eliciting sensitive information regarding Ms. Battista's traumatic childhood, her medical and mental health records prior to incarceration, and other tangential details about her life. These requests are inappropriate and bear no relation to any possible security issues relating to administering Ms. Battista her prescribed GID treatment.

**C.**     **Discovery Aimed At Challenging Ms. Battista's Diagnosis Is Irrelevant Because DOC Regulations Prohibit The DOC From Questioning Medical Diagnoses**

Defendants currently justify their refusal to provide Ms. Battista medical care based on "serious concerns regarding the validity of the GID diagnosis." Defendants' Motion To Dismiss, p. 2. Pursuant to DOC regulations, however, defendants have no authority to challenge the validity of Ms. Battista's GID diagnosis or any medical diagnosis for that matter. Instead, the UMCHP, the DOC's private medical contractor, has full responsibility for all decisions related to the type, timing and level of medical and mental health services provided to inmates and "[m]atters of clinical judgment are the <u>sole province</u> of the licensed health care professionals .." *See* 103 DOC 601.02 (emphasis added); 103 DOC 610.1. The regulations are explicit - defendants are not allowed to question the UMCHP's prescribed treatment. Indeed, agents of the DOC in defending against a request for injunction from a criminal inmate with GID have given the Court assurances in the past that the DOC would not interfere with the medical judgments of its contractual providers in the future. *See Kosilek v. Maloney*, 221 F. Supp. 2d 156, 176 (D. Mass. 2002) ("*Kosilek I*")(accepting the Commissioner's testimony that he would not interfere with the medical judgment of GID treatment specialists).

At bottom, Defendants are contesting the recommendations of the DOC's medical providers based on a political decision that people with GID should be treated differently, a decision that is outside the bounds of its authority and contrary to the Court's guidance in Kosilek I. Discovery aimed at eliciting information to support the after-the-fact challenge to Ms.

9

Battista's GID diagnosis, information that has nothing to do with the DOC's authority to review the security implications of treatment recommendations, is therefore irrelevant and must be prohibited.

### D. Discovery Regarding Ms. Battista's Family Members And Juvenile Trouble With The Law Is Irrelevant To The DOC's Current Stated Purpose of Challenging Ms. Battista's Diagnosis

Defendants have requested, among other things, an explanation for the deaths of Ms. Battista's immediate family members and Ms. Battista's juvenile records.[5] Putting aside the fact that DOC regulations expressly prohibit the DOC from challenging the clinical judgment of its contracted health providers, these unnecessary requests have no possible relevance to the DOC's current stated purpose of challenging Ms. Battista's GID diagnosis. There has been no showing that this information is the type considered by GID experts in diagnosing GID evaluation or formulating a GID treatment plan. Thus, if denied this discovery, defendants would not be burdened in any legitimate way.

In addition, this Court is not required to blind itself to the purposes for which the DOC seeks this information. *Oppenheimer Fund*, 437 U.S. at 353 (In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information . . . discovery should be denied when a party's aim is to . . . embarrass or harass the person from whom he seeks discovery.) (citing *United States v. Howard*, 360 F.2d 373, 381 (CA3 1966); *Balistrieri v. Holtzman*, 52 F.R.D. 23, 24-25 (ED Wis. 1971)). It is quite clear that defendants' discovery is designed to harass and intimidate Ms. Battista. As discussed above, defendants are generally aware that Ms. Battista endured an extremely traumatic

---

[5] Exhibit A, Interrogatory 3; Exhibit B, Requests 11 & 14. Defendants also requested documents pertaining to Ms. Battista's "primary and secondary education, including . . . all progress reports, evaluations, reports, report cards, notes," but have since agreed to withdraw that request

childhood. Defendants know, for example, that Ms. Battista's father was involved in her mother's death when Ms. Battista was between six and eight years old. There is no reason why defendants' require an explanation of Ms. Battista's mother's death other than to harass and intimidate Ms. Battista by stirring up painful memories. Surely the DOC cannot claim that this information is relevant to challenging Ms. Battista's GID diagnosis. Moreover, even if the fact of her mother's violent death were relevant, that fact is already well known to the DOC, and eliciting the gruesome details would serve no further legitimate purpose.

> **E.**    **Discovery Regarding Ms. Battista's Childhood Medical And Mental Health Treatment Is Irrelevant To The DOC's Current Stated Purpose Of Challenging Ms. Battista's Diagnosis**

Defendants also demand that Ms. Battista provide copies of certain medical records dating back to her birth and all mental health records dating back to when she was five years old, as well as that she provide the details of any mental health treatment prior to her present period of incarceration and civil commitment.[6] Ms. Battista requests that this Court issue a protective order prohibiting defendants from obligating her to gather, produce and discuss records of medical and mental health treatment prior to her incarceration. Any such information is irrelevant to the DOC's current stated purpose of challenging Ms. Battista's GID diagnosis and in any event is not within Ms. Battista's care, custody or control.

Defendants have made no showing that the presence or absence of childhood symptoms either proves or disproves a diagnosis of GID. In fact, the diagnostic criteria set forth in the DSM-IV and reiterated in the Harry Benjamin standards do not include childhood symptoms at all. Accordingly, Ms. Battista's GID NOS diagnosis is not dependent on childhood symptoms,

---

[6] See Exhibit B, Requests 8, 9, 10; Exhibit A, Interrogatories 5 & 6. Defendants initially requested documents pertaining to all of Ms. Battista's childhood medical records but have since agreed to narrow that request to include Ms. Battista's childhood medical records that relate to her GID diagnosis and Congenital Adrenal Hyperplasia.

and any references to childhood symptoms in patient history sections of Ms. Battista's GID evaluations are for background purposes only and are not essential to the GID NOS diagnosis.

The greatest time period even remotely relevant to this litigation begins at some point prior to Ms. Battista's first complaints about GID in or around 1997, but certainly no earlier than her incarceration in 1983. Defendants already have Ms. Battista's medical and mental health records spanning the relevant time period and have no legitimate reason for requesting Ms. Battista's childhood records. Defendants' requests are impermissibly overbroad because they are unlimited in time and encompass records that contain information regarding medical conditions completely unrelated to GID. *See Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 365-366 (D. Colo. 2004) (narrowing the temporal scope of therapy records subject to discovery because "the potential harm occasioned by disclosure outweighs the presumption in favor of broad discovery," and denying discovery of medical conditions "unrelated to the claims or allegations in this case.").

Not only is wholesale disclosure of Ms. Battista's childhood medical and mental health records not justified, it is not reasonably possible. Ms. Battista has very little memory of the details of her childhood and there are no collateral sources alive today who possess such information. Ms. Battista lived in at least four different states from the time she was about six years old until her incarceration in 1983 and was treated by many different doctors. It is patently unreasonable to require Ms. Battista to track down such dated and spread out childhood medical records where the information sought is irrelevant to the case.

### F. Defendants' Demands For Blanket Releases of Records Are Overbroad, Unduly Invasive And Must Be Denied

In addition to the irrelevant interrogatories and document requests discussed above, defendants have also demanded that Ms. Battista sign <u>seven</u> blanket releases for medical records,

mental health records, records relating to her commitment to any mental health facility, juvenile records, criminal records, military records, and GID evaluations.[7] Essentially, Defendants are seeking authorization to gather sensitive, private information that is not even available to Ms. Battista about virtually every aspect of her life.

These requests are unauthorized by the discovery rules, overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and a gross invasion of Ms. Battista's privacy. Courts routinely prohibit these types of discovery fishing expeditions. *See e.g. Miles v. Century 21 Real Estate LLC*, 2006 U.S. Dist. LEXIS 67974 (E.D. Ark. 2006)(denying Defendant's Motion to Compel a medical release and noting that "Defendants' request is completely unlimited in time, and would therefore require Plaintiffs to submit information encompassing their entire lives."); *In Re. Accutane Products Liability Litigation*, 2006 U.S. Dist. LEXIS 27642 (M.D. Fla. 2006) (subpoena duces tecum requiring blanket medical releases were "overly broad and exceeded the bounds of fair discovery"); *Gilson v. Evergreen At Talbot Road, LLC*, 2005 U.S. Dist. LEXIS 41152 (W.D. Wash. 2005) (denying in part Defendant's request for a general medical release because it is "unnecessarily broad" and "would allow Defendant to acquire the medical records of Plaintiff pertaining to matters wholly unrelated to those at issue in the case."); *Broderick v. Shad*, 117 FRD 306, 309 (D.D.C. 1987) ("...we deny as irrelevant and intrusive defendant's motion to compel a wholesale investigation of plaintiff's medical history over the past 11 years.") Defendants already possess all of Ms. Battista's records from the past 25 years and Ms. Battista should not be required to give defendants access to irrelevant information encompassing her entire life.

---

[7] See Exhibit B. Requests 8-13 & 15

## III.  CONCLUSION

Defendants' interrogatories and document requests seek information that is irrelevant to either of the DOC's pretextual justifications for denying Ms. Battista treatment. This discovery has no legitimate purpose - it is simply an attempt to harass and intimidate Ms. Battista and to gather information to use to disparage her character. For the reasons discussed above, Ms. Battista respectfully requests that this Court enter a protective order prohibiting defendants from:

(a)    discovery of her juvenile records;

(b)    inquiring at her deposition into the details of her childhood except as it relates to her memory of behaviors noted in the various medical records as associated with GID or symptoms otherwise relevant to her GID;

(c)    obtaining the blanket releases demanded in its Request for Production of Documents; and

(d)    obligating Ms. Battista to gather and produce records of medical and mental health treatment prior to incarceration.

Ms. Battista also requests that the protective order require defendants to extend the simple courtesy of respecting her preference for being referred to as a female.

Dated: February 29, 2008

Respectfully submitted,

SANDY J. BATTISTA

by her attorneys,

/s/ Dana M. McSherry
Emily Smith–Lee (BBO# 634223)
Neal E. Minahan (BBO#661371)
Dana M. McSherry (BBO #664430)
Ada Sheng (BBO#664775)
McDermott Will & Emery LLP
28 State Street

14

Boston, MA 02109
tel: 617.535.4000
fax: 617.535.3800

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 29, 2008.

/s/ Dana M. McSherry
Dana M. McSherry

BS199 1564677-4 009962.0255

15

# **EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SANDY JO BATTISTA,

    Plaintiff,

    v.
                             C.A. No. 05-11456-DPW

KATHLEEN M. DENNEHY, et al.,

    Defendants.

## FIRST SET OF INTERROGATORIES PROPOUNDED
## TO PLAINTIFF BY DEFENDANTS

Defendants, through counsel, hereby propound the following interrogatories upon plaintiff,

Sandy Jo Battista, pursuant to Rule 33 of the Fed. R. Civ. P., to be answered under oath within 30

days of the date of service:

## INSTRUCTIONS

1.    Your best estimate must be given whenever an exact date cannot be supplied. Any

estimated date must be designated as such and the basis, source and sources, and/or derivation of

each estimate be set forth separately.

2    With respect to the answer to each interrogatory, or sub-part thereof, if you do not

have direct knowledge of the information requested, state the source of the information given with as

much particularity as is reasonably possible, including the nature and designation of any document or

file that contains any of the information and the identity of any other person whom you know or

believe has or may have some or all of the information sought in such interrogatory or sub-part

thereof.

3.    These interrogatories shall be deemed to be continuing requests for supplemental

2

answers, pursuant to Fed R Civ P 26(e), so as to require additional answers if the party on whom these interrogatories are served obtains further information between the time answers are served and the time of trial

4.      If, in answering any of these interrogatories, you wish to assert or rely upon a privilege or any rule protecting against disclosure of a document or communication, you may specify such privilege or other protective rule in lieu of setting forth the substance thereof  However, in that event you are hereby required, separately with respect to each such document or communication, to identify the document or communication, excluding only contents claimed to be privileged or otherwise protected

5      Any reference in this request to the terms "DOC employee" or "employee" shall refer only to individuals directly employed by the Massachusetts Department of Correction, and not the employees of University of Massachusetts Correctional Health Program (UMCHP) or Correctional Medical Services, Inc. (CMS), or any other contractor or vendor with the Department of Correction

6      Any reference in this request to the term "medical services staff member" shall refer only to medical and mental health staff, such as physicians, psychiatrists, psychologists, social workers, nurses, therapists, counselors, physicians assistants, mental health assistants, medical support staff and other medical/psychological staff directly employed by the UMCHP, CMS, or any other medical contractor or vendor with the Department of Correction or UMCHP or CMS

## INTERROGATORIES

1      Please state whether plaintiff has lived in any State besides the Commonwealth of Massachusetts for any period of time in excess of 21 days between December 31, 1961 and January 1, 1983  If so, for each period of time in excess of 21 days that plaintiff lived in a jurisdiction outside of Massachusetts, please identify:

3

a)    the location, including street address, city/town, and state;

b)    the period of time plaintiff lived at that location;

c)    reason plaintiff moved to the location and the reason plaintiff left the location;

d)    whether plaintiff attended school while residing at the location

2    Please describe your educational background in detail, including, but not limited to, the name of each school you have attended, the address of each school attended and dates you attended the school  Please include all primary, secondary and technical and vocational programs, and any and all specialized training courses in which you have participated

3    Please identify the members of your immediate family, including all siblings, parents and grandparents  For each family member please state their current address, age and employment. If any family member is deceased, please identify the date and location and the cause of death

4    Please describe your military service in detail, including, but not limited to, the dates you were in the military, branch of the military, rank achieved, training, list of all postings and assignments  Include within your response, a complete description of the circumstances of your discharge from the military.

5    If, at any time, you have received treatment for a mental illness <u>prior</u> to your present period of incarceration and civil commitment, please state:

        a    the nature of the mental health treatment(s) you received, including but not limited to whether treatment was in-patient or out-patient, and included prescription medications, counseling, psychotherapy, etc ;

        b.    dates and duration of mental health treatment;

        c    specific locations where mental health treatments were administered;

        d    name(s), title(s) and address(es) of individuals administering mental health treatments, including prescription medications

4

6    If, prior to your present period of custody with the Department of Correction you received mental health treatment from a mental health professional, including a psychiatrist, psychologist, therapist, social worker, mental health professional, nurse, mental health worker, at any mental health center, clinic, facility, hospital, office, or school in any State, including the Commonwealth of Massachusetts, including mental health treatment as an inpatient or under civil commitment, please state for <u>each</u> period of mental health treatment, custody or commitment:

     a    describe the nature of the mental health treatment provided;

     b    the date of the period of mental health treatment, confinement/custody;

     c    the name and professional title of the mental health provider;

     d.    the name and address of the mental health center, clinic. hospital where the mental health treatment took place;

     e.    if the mental health treatment took place during confinement/custody, describe the circumstances resulting in your confinement/custody;

     f    describe the circumstances of your release from confinement/custody

7    If, prior to your present period of custody with the Department of Correction you were ever committed or placed within the custody of the Massachusetts Department of Youth Services, please state for <u>each</u> period of custody, treatment or commitment to a facility of the Department of Youth Services:

     a    the dates of your confinement/custody;

     b    the name and address of the facility;

     c.    the circumstances resulting in your confinement/custody;

     d.    describe the nature of the confinement, including any treatment provided;

     e    describe the circumstances of your release from confinement/custody

5

8     If, <u>prior</u> to the commencement of your present period of custody with the Department of Correction including incarceration and civil commitment, you sought or received treatment for a medical condition known as Congenital Adrenal 21 Hyperplasia (CAH) please describe each and every contact you had with any doctor, nurse, therapist, medical specialist, endocrinologist, hospital, clinic or medical center regarding such treatment, including, but not limited to all examinations, evaluations, consultations, interviews, therapy sessions, meetings, visits, conversations, receipt of any medical or psychological treatment and receipt of prescribed and non-prescribed medications, including hormones  For <u>each</u> contact and treatment listed, please state:

     a     date, time and place of each contact for treatment for CAH;

     b.    name and title of each individual you sought or received treatment from;

     c     a description of each and every medical/psychological treatment services received by the plaintiff for CAH

9     If, <u>prior</u> to the commencement of your present period of custody with the Department of Correction including incarceration and civil commitment, you sought or received treatment for your alleged gender identity disorder (GID), please list each and every contact you had with any medical or non-medical individual, including, psychiatrists, psychologists, therapists, social workers, mental health professional, nurse, hospital, clinic, facility, center or school regarding such treatment, including, but not limited to all examinations, evaluations, consultations, interviews, therapy sessions, meetings, visits, conversations, receipt of any medical or psychological treatment and receipt of prescribed and non-prescribed medications, including hormones  For <u>each</u> contact and treatment listed, please state:

     a     date, time and place of each contact for treatment for gender identity disorder;

     b.    name and title of each individual you sought or received treatment from;

6

    c      a description of the medical/psychological treatment services received by plaintiff

10     If you have received a written report, memorandum, medical record, note or any document containing a description of any evaluation, examination, diagnosis, consultation and/or conclusions or recommendations regarding your alleged GID, other than the reports prepared by the Fenway Clinic and Diane Ellborn, L IC S W., for each report, please indicate the date of said report, the name of the author of the report, a summary of the opinion contained within the report and whether you have a copy of the report in your possession

11     If, at any time, you received treatment for a drug or alcohol problem prior to your present period of incarceration and civil commitment, please state:

    a      the nature of the drug/alcohol treatment(s) received, including whether treatment was in-patient or out-patient;

    b.     dates and duration of drug/alcohol treatment;

    c      specific locations where drug/alcohol treatments were received;

    d.     name(s) and title(s) of individuals administering drug/alcohol treatments

12.     If you allege you have suffered and/or continue to suffer emotional or psychological injuries as a result of the denial of treatment for your alleged GID during your present period of incarceration/civil commitment, as alleged in your complaint and/or amended complaint, please describe fully and in complete detail said emotional and psychological injuries.

13.     Please describe any emotional or psychological injuries you suffered as a result of your alleged GID prior to your present period of incarceration/ civil commitment, including the dates and duration of the emotional and psychological injuries you suffered. Include within your answer a detailed description of whether the emotional or psychological injuries you suffered as a result of

7

your GID prior to your present incarceration are similar to or different in any way from the emotional and psychological injuries you claim to suffer from as set forth in your complaint

14.    Please describe fully and in complete detail any and all physical injuries, ailments or pains which you claim to have suffered as a result of the denial of treatment for your alleged GID as set forth in your complaint and/or amended complaint, stating the parts of the body so effected, the severity of said injuries, ailments or pains, and how long each lasted

15.    Please state in itemized form all expenses or damages suffered by you or incurred by anyone as a result of the occurrences set forth in your amended complaint

16    Please identify by full name and address all persons from whom you have obtained written (signed or unsigned) or oral statements regarding the occurrences alleged in your amended complaint, and set forth the dates and substance of any such statement, and the relationship (if any) to plaintiff.

17.    Please state the names, addresses and qualifications of each expert witness you intend to call at the trial of this action, and with respect to each expert witness, please state:

      a     the subject matter to which each is expected to testify;

      b.    the facts and opinions to which each is expected to testify;

      c     the basis for each such opinion

Dated: December 10, 2007                    Respectfully submitted,

NANCY ANKERS WHITE
Special Assistant Attorney General

Richard C McFarland, BBO# 542278
Joan T Kennedy, BBO# 554935
Department of Correction

8

70 Franklin Street, Suite 600
Boston, MA  02110-1300
(617) 727-3300,  Ext  132

# **EXHIBIT B**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SANDY JO BATTISTA,

     Plaintiff,

     v.                              C.A. No. 05-11456-DPW

KATHLEEN M. DENNEHY, et al.,

     Defendants.

## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
## PROPOUNDED TO PLAINTIFF BY DEFENDANTS

Pursuant to the provisions of Rule 34 of the Fed. R. Civ. P., defendants, through counsel, request that the plaintiff, Sandy Jo Battista, produce for inspection and copying at the Department of Correction, Legal Division, 70 Franklin Street, Suite 600, Boston, Massachusetts, 02110, the following documents within the possession, custody or control of Battista, or any agent, within thirty (30) days of receipt of this request.

## DEFINITIONS

A.    <u>Documents</u> - The term "documents" means all writings of any kind, including the originals and all nonidentical copies, whether different from the originals by reason of any notation made on such copies or otherwise (including without limitation correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, offers, notations of any sort of conversations, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, telefax, electronic mail, invoices, worksheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic

2

or aural records or representations of any kind (including without limitation photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures and electronic, mechanical or electric records and representations of any kind (including without limitation tapes, cassettes, discs, recordings)

B    <u>All Documents</u> - The term "all documents" means every document as above defined known to you and every such document which can be located or discovered by reasonably diligent efforts

C    <u>Possession, Custody or Control</u> - The term "possession, custody or control" includes the joint or several possession, custody or control not only by plaintiff, but also the joint or several possession, custody or control by each or any other person acting or purporting to act on behalf of plaintiff

D    <u>Person</u> - The term "person" means any natural person, corporation, partnership, proprietorship, association, organization or group of natural persons

E    <u>You or Your</u> - The term "you or your" means plaintiff, or any other person, natural or corporate, controlled by plaintiff

F.    <u>Relevant Period</u> - The term "relevant period" means the time period from December 30, 1961 to the present date

G    <u>Concerning</u> - The term "concerning" shall include, but not be limited to, referring to, relating to, embodying, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, constituting, illustrating, depicting, summarizing, mentioning, recording, evidencing, supporting, contradicting and rebutting, either directly or by inference

**<u>INSTRUCTIONS</u>**

3

1    Documents include those which are in plaintiff's actual or constructive possession, custody, care, or control, whether or not such documents were received from or disseminated to any other person or entity, including but not limited to attorneys, accountants, or employees

2    The obligation to produce the documents sought by this Document Request is of a continuing nature pursuant to Federal Rule of Civil Procedure 26(e)  If at any time after responding to this Request, plaintiff should acquire actual or constructive possession, custody, care, or control of any additional documents within the scope of a particular Document Request, plaintiff must identify such documents to the attorneys for defendant within ten (10) days of their receipt

3    In the event that any responsive document was, but is no longer, in plaintiff's actual or constructive possession, custody, care, or control, state identify the individual, group, organization or entity who presently has possession, custody, care, or control of the responsive document and where the responsive document is located  Please indicate if any other disposition has been made of the responsive document, when, where, and the reason for such disposition

4    In the event that the document whose production has been requested has been destroyed, state the reason for the document's destruction and the date on which the document was destroyed; identify fully the person in whose possession, custody, care, or control the document was when it was destroyed; and identify fully the person who destroyed the document or who ordered its destruction

5.    The final version and each draft of each document should be produced separately Each original and each non-identical copy (bearing marks or notations not found on the original) of each final version and draft of each document should be produced separately

6.    If plaintiff claims that any document requested is privileged or constitutes work product, submit on the time and date of production a written statement for each document withheld

4

sufficient to evaluate the claim of privilege or work product, including information that:

(a)    identifies the person who prepared or authored the documents and all recipients or addresses, including recipients of copies;

(b)    specifies the date on which the document was prepared or transmitted;

(c)    describes the nature of the document (e.g., letter, memorandum notice, etc.);

(d)    identifies the subject matter of the document;

(e)    if the document refers or relates to a meeting or conversation, identifies all persons who were present at or parties to the meeting or conversation and describes who those persons are; and

(f)    sets forth the nature of and basis for the privilege asserted.

## DOCUMENTS TO BE PRODUCED

1.    Copies of any and all documents, tape recordings, recordings, transcriptions of oral statements, e-mails, or photographs of plaintiff which pertain in any way to the issues raised in plaintiff's complaint and/ or amended complaint

2.    Copies of any and all documents, tape recordings, recordings, requests, transcriptions of oral statements, e-mails, or photographs <u>sent</u> by plaintiff to any defendants or any employee of the Massachusetts Department of Correction (DOC) or any employee of the University of Massachusetts Medical School correctional program (UMMS), Correctional Medical Services (CMS), Mental Health Management (MHM), or any other contractor/vendor hired by the DOC, UMMS, CMS or MHM which pertain in any way to the issues raised in plaintiff's complaint and/or amended complaint

3.    Copies of any and all documents, tape recordings, recordings, transcriptions of oral statements, e-mails, or photographs <u>received</u> by plaintiff or his agent(s) from any defendant or any

5

DOC employee or any employee of UMMS, CMS, MHM or any contractor/vendor hired by the DOC, UMMS, CMS, MHM, or from any other individual, including witnesses, inmates, gender identity professionals, which pertain in any way to the issues raised in plaintiff's complaint and/or amended complaint

4    Copies of any and all documents, tape recordings, recordings, transcriptions of oral statements, e-mails, or photographs <u>sent</u> by plaintiff to any gender identity professional regarding the issue of plaintiff's gender identity disorder or any issue raised in the complaint and/or amended complaint

5.    Copies of any and all documents, tape recordings, recordings, requests, transcriptions of oral statements, e-mails, or photographs <u>received</u> by plaintiff from any gender identity professional regarding the issue of plaintiff's treatment for gender identity disorder

6    Copies of any and all documents, tape recordings, recordings, transcriptions of oral statements, e-mails, which support in any manner the claims plaintiff has raised in the complaint and/or amended complaint

7    Copies of any and all documents, tape recordings, recordings, transcriptions of oral statements, or e-mails containing statements by any person, including but not limited to plaintiff, any DOC staff member, any UMMS, CMS, MHM staff member, any private contractor, any inmate, or any witness, including transcriptions of oral statements, which relate to the claims raised in the complaint and/or amended complaint

8    Copies of any and all medical records and documents relating to treatment, evaluation, and/or testing of plaintiff by any provider of health care, including, but not limited to, physicians, psychiatrists, psychologists, social workers, mental health assistants, physician assistants, therapists, nurses, hospitals, or similar institutions, clinics, mental health facilities and which were

6

created on or after December 30, 1961  If plaintiff is not in possession, custody or control of said medical records, please identify the name and address of each institution, clinic, hospital, facility, office or individual in possession of said medical records  Plaintiff shall provide defendants with a signed authorization for release of medical records form for each institution, clinic, hospital, facility, office or individual identified as having possession, custody or control of medical records pertaining to plaintiff

9       Copies of any and all mental health/psychiatric documents and records relating to treatment, evaluation, testing of plaintiff by any provider of mental health care, including, but not limited to, physicians, psychiatrists, psychologists, social workers, mental health assistants, mental health professional, therapists, nurses, hospitals, or similar institutions, clinics, office, mental health center, facility and which were created on or after January 1, 1966  If plaintiff is not in possession, custody or control of said mental health/psychiatric records, please identify the name and address of each hospital, or similar institution, clinic, office, mental health center, facility or individual in possession of said mental health/psychiatric records  Plaintiff shall provide defendants with a signed authorization for release of mental health/psychiatric records form for each hospital, or similar institution, clinic, office, mental health center, facility or individual identified as having possession, custody or control of mental health/psychiatric records pertaining to plaintiff

10      Copies of any and all documents and records relating to plaintiff's commitment to any facility of any State within the United States for the treatment of mentally ill individuals, including the Commonwealth of Massachusetts Department of Mental Health  Include within your response, copies of any and all records relating to confinement, custody, legal proceedings, release, mental health or medical treatment, evaluation, and/or testing of plaintiff by any provider of health care, including, but not limited to, agency staff members, physicians, psychiatrists, psychologists, social

7

workers, mental health assistants, mental health professionals, therapists, nurses, hospitals, or similar institutions, clinics, mental health facilities and which were created on or after January 1, 1966. If plaintiff is not in possession, custody or control of said records, please identify the name and address of each facility or individual in possession of said records. Plaintiff shall provide defendants with a signed authorization for release of records form for each facility or individual identified as having possession, custody or control of records pertaining to plaintiff.

      11     Copies of any and all documents and records relating to plaintiff's commitment to any facility of any State for the custody and/or treatment of youthful offenders, including the Commonwealth of Massachusetts' Department Youth Services. Include within your response, copies of any and all records relating to confinement, custody, legal proceedings, release, mental health or medical treatment, evaluation, and/or testing of plaintiff by any provider of health care, including, but not limited to, agency staff members, physicians, psychiatrists, psychologists, social workers, mental health assistants, therapists, nurses, hospitals, or similar institutions, clinics, mental health facilities and which were created on or after January 1, 1974. If plaintiff is not in possession, custody or control of said records, please identify the name and address of each facility or individual in possession of said records. Plaintiff shall provide defendants with a signed authorization for release of records form for each facility or individual identified as having possession, custody or control of records pertaining to plaintiff.

      12     Copies of any and all documents and records relating to plaintiff's confinement and/or custody at any local, County or State correctional facility or jail, or police lock-up of any State, including any and all records related to custody and/or confinement, medical or mental health treatment, evaluation, and/or testing of plaintiff by any facility employee, provider of health care, including, but not limited to, physicians, psychiatrists, psychologists, social workers, mental health

8

assistants, therapists, nurses, hospitals, or similar institutions, clinics, mental health facilities and which were created on or after January 1, 1974. If plaintiff is not in possession, custody or control of said records, please identify the name and address of each facility or individual in possession of said records. Plaintiff shall provide defendants with a signed authorization for release of records form for each facility or individual identified as having possession, custody or control of records pertaining to plaintiff.

13      Copies of any and all documents and records relating to plaintiff's involvement, participation, or enlistment with any United States armed forces services, including the Army, Navy, Marines, Coast Guard, National Guard, Reserves, or any military organization within the United States. If plaintiff is not in possession, custody or control of said records, please identify the name and address of each armed service, institution, facility or individual in possession of said records. Plaintiff shall provide defendants with a signed authorization for release of records form for each armed service, institution, facility or individual identified as having possession, custody or control of records pertaining to plaintiff.

14.      Copies of any and all documents and records pertaining to plaintiff's primary and secondary education, including, but not limited to all progress reports, evaluations, reports, report cards, notes, memorandums, memos, or correspondence, from any individual, including but not limited to any school official, principal, assistant principal, teacher, teacher's assistant, counselor, therapist, special education teacher, nurse, physician.

15      Copies of any and all documents and records related to any evaluation, observation, treatment, testing pertaining to a gender identity disorder ("GID"), by any provider, including, but not limited to physicians, psychiatrists, psychologists, social workers, mental health assistants, therapists, nurses, hospitals, or similar institutions, clinics, mental health facilities. If plaintiff is not

9

in possession, custody or control of said records, please identify the name and address of each facility or individual in possession of said records. Plaintiff shall provide defendants with a signed authorization for release of records form for each facility or individual identified as having possession, custody or control of records pertaining to plaintiff.

16    Any and all bills relating to medical and other expenses of any kind alleged by the plaintiff in the complaint and/or amended complaint.

17    Copies of any and all records, documents, statements, correspondence, memos, writings and other evidence of things upon which plaintiff intends to rely upon in support of the claims raised in the complaint and/or amended complaint and/or submit as evidence at the time of trial.

18.    Any and all grievance, grievance appeals submitted by plaintiff to DOC, UMMS, CMS, or MHM or any vendor under contract to the DOC pertaining to any issue raised in plaintiff's complaint and/or amended complaint. Any and all responses, rulings, decisions, correspondence or other writings pertaining to any grievance filed by plaintiff pertaining to any issue raised in plaintiff's complaint and/or amended complaint.

Dated:  December 10, 2007                    Respectfully submitted,

                                             NANCY ANKERS WHITE
                                             Special Assistant Attorney General

                                             Richard C. McFarland, BBO# 542278
                                             Joan T. Kennedy, BBO #554935
                                             Legal Division
                                             Department of Correction
                                             70 Franklin Street, Suite 600
                                             Boston, MA  02110
                                             (617) 727-3300

## Authorization for Release of Information
### Permission to Share Information

If you want the _____ to share information about you with another person or
               (Fill in name of person or organization)
organization, please make sure that you fill out all of the sections below  (Sections I-VI)  This will tell us what
information you want us to share and who to share it with   If you leave any sections blank, with the exception of
Section II (B), your permission will not be valid, and we will not be able to share your information with the person(s)
or organization you listed on this form.

**SECTION I**
I, _____, give my permission for _____
          (print your name)                           (Fill in name of person or
organization)
to share the information about me that I list in Section II with the person(s) or organization that I list in Section V

**SECTION II**
**A.  Health and Personal Information**
Please describe the information you want the _____ to share about you
                          (Fill in name of person or organization)
Please include any dates and details you want to share

_____

_____

_____

_____

**B.  Permission about Specific Health Information.  Only if you choose to share any of the following
information, please write your initials on the line:**
_____I specifically give permission, as required by M G L  c  111, § 70F, to share information in my record about HIV
antibody and antigen testing, and HIV/AIDS diagnosis or HIV/AIDS treatment.
_____I specifically give permission, as required by M G L  c  111, §70G, to share information in my record about my
genetic information
_____I specifically give permission to share information in my record about alcohol or drug treatment   If this
information is shared, I understand that a specific notice required by 42 CFR, Part 2 shall be included prohibiting the
redisclosure of this confidential information.

**SECTION III – Reason for Sharing this Information**
Please describe the reason(s) for sharing this information   If you do not want to list reasons, you may simply write
"at my request," if you are initiating the request

_____

_____

_____

**SECTION IV – Who May Share This Information**
I give permission to the person or organization listed below to share the information I listed in Section II:

_____
Name

_____
Organization

_____
Address

_____

## Authorization for Release of Information

**SECTION V – Who May Receive My Information**
The person or organization listed in Section IV may share the information I listed in Section II with this person(s) or organization:

_____
Name
_____
Organization
_____
Address
_____

I understand that the person(s) or organization listed in this section may not be covered by federal or state privacy laws, and that they may be able to further share the information that the is given to them

**SECTION VI – How Long This Permission Lasts**
This permission to share my information is good until _____
                                                                                                    Indicate date or event
If I do not list a date or event, this permission will last for one year from the date it is signed

- I understand that I can change my mind and cancel this permission at any time. To do this, I need to write a letter to _____, and send it or bring it to the place where I am now giving
                     (Fill in name of person or organization)
  this permission (or fill in specific location) If the information has already been given out by, I understand that it is too late for me to change my mind and cancel the permission

- I understand that I do not have to give permission to share my information with the person(s) or organization I listed in Section V.

- I understand that if I choose not to give this permission or if I cancel my permission, I will still be able to receive any treatment or benefits that I am entitled to, as long as this information is not needed to determine if I am eligible for services or to pay for the services that I receive.

**SECTION V – Signature**
**Please sign and date this form, and print your name.**

_____          _____
Your Signature                                              Date

_____
Print Your Name

If this form is being filled out by someone who has the legal authority to act for you (such as the parent of a minor child, a court appointed guardian or executor, a custodial parent, or a health care agent), please:

Print the name of the person filling out this form: _____

Signature of the person filling out this form: _____

Describe how this person has legal authority for this individual: _____

## Authorization for Release of Information
### Permission to Share Information

If you want the _____ to share information about you with another person or
                         (Fill in name of person or organization)
organization, please make sure that you fill out all of the sections below  (Sections I-VI)   This will tell us what
information you want us to share and who to share it with   If you leave any sections blank, with the exception of
Section II (B), your permission will not be valid, and we will not be able to share your information with the person(s)
or organization you listed on this form.

**SECTION I**
I, _____ , give my permission for _____
                (print your name)                                (Fill in name of person or
organization)
to share the information about me that I list in Section II with the person(s) or organization that I list in Section V

**SECTION II**
**A.  Health and Personal Information**
Please describe the information you want the _____ to share about you
                                  (Fill in name of person or organization)
Please include any dates and details you want to share

_____
_____
_____
_____

**B.  Permission about Specific Health Information.  Only if you choose to share any of the following
information, please write your initials on the line:**
_____I specifically give permission, as required by M G L  c  111, § 70F, to share information in my record about HIV
antibody and antigen testing, and HIV/AIDS diagnosis or HIV/AIDS treatment
_____I specifically give permission, as required by M G L  c  111, §70G, to share information in my record about my
genetic information
_____I specifically give permission to share information in my record about alcohol or drug treatment   If this
information is shared, I understand that a specific notice required by 42 CFR, Part 2 shall be included prohibiting the
redisclosure of this confidential information.

**SECTION III – Reason for Sharing this Information**
Please describe the reason(s) for sharing this information.   If you do not want to list reasons, you may simply write.
"at my request," if you are initiating the request.

_____
_____
_____

**SECTION IV – Who May Share This Information**
I give permission to the person or organization listed below to share the information I listed in Section II

_____
Name
_____
Organization
_____
Address
_____

## Authorization for Release of Information

### SECTION V – Who May Receive My Information

The person or organization listed in Section IV may share the information I listed in Section II with this person(s) or organization:

_____

Name

_____

Organization

_____

Address

_____

I understand that the person(s) or organization listed in this section may not be covered by federal or state privacy laws, and that they may be able to further share the information that the is given to them

### SECTION VI – How Long This Permission Lasts

This permission to share my information is good until _____

Indicate date or event

If I do not list a date or event, this permission will last for one year from the date it is signed

- I understand that I can change my mind and cancel this permission at any time   To do this, I need to write a letter to _____, and send it or bring it to the place where I am now giving
  (Fill in name of person or organization)
  this permission (or fill in specific location) If the information has already been given out by, I understand that it is too late for me to change my mind and cancel the permission

- I understand that I do not have to give permission to share my information with the person(s) or organization I listed in Section V

- I understand that if I choose not to give this permission or if I cancel my permission, I will still be able to receive any treatment or benefits that I am entitled to, as long as this information is not needed to determine if I am eligible for services or to pay for the services that I receive

### SECTION V – Signature

Please sign and date this form, and print your name.

_____        _____

Your Signature                                                      Date

_____

Print Your Name

If this form is being filled out by someone who has the legal authority to act for you (such as the parent of a minor child, a court appointed guardian or executor, a custodial parent, or a health care agent), please:

Print the name of the person filling out this form: _____

Signature of the person filling out this form: _____

Describe how this person has legal authority for this individual: _____

## Authorization for Release of Information
### Permission to Share Information

If you want the _____ to share information about you with another person or
    (Fill in name of person or organization)
organization, please make sure that you fill out all of the sections below  (Sections I-VI)  This will tell us what
information you want us to share and who to share it with  If you leave any sections blank, with the exception of
Section II (B), your permission will not be valid, and we will not be able to share your information with the person(s)
or organization you listed on this form.

**SECTION I**
I, _____, give my permission for _____
                 (print your name)                                    (Fill in name of person or
organization)
to share the information about me that I list in Section II with the person(s) or organization that I list in Section V

**SECTION II**
**A.  Health and Personal Information**
Please describe the information you want the _____ to share about you
                                           (Fill in name of person or organization)
Please include any dates and details you want to share
_____
_____
_____
_____

**B.  Permission about Specific Health Information.  Only if you choose to share any of the following
    information, please write your initials on the line:**
____I specifically give permission, as required by M G L  c  111, § 70F, to share information in my record about HIV
antibody and antigen testing, and HIV/AIDS diagnosis or HIV/AIDS treatment
____I specifically give permission, as required by M G L  c  111, §70G, to share information in my record about my
genetic information
____I specifically give permission to share information in my record about alcohol or drug treatment  If this
information is shared, I understand that a specific notice required by 42 CFR, Part 2 shall be included prohibiting the
redisclosure of this confidential information.

**SECTION III -- Reason for Sharing this Information**
Please describe the reason(s) for sharing this information   If you do not want to list reasons, you may simply write
"at my request," if you are initiating the request
_____
_____
_____

**SECTION IV -- Who May Share This Information**
I give permission to the person or organization listed below to share the Information I listed in Section II:

_____
Name
_____
Organization
_____
Address
_____

## Authorization for Release of Information

**SECTION V – Who May Receive My Information**
The person or organization listed in Section IV may share the information I listed in Section II  with this person(s) or organization:

_____
Name
_____
Organization
_____
Address
_____

I understand that the person(s) or organization listed in this section may not be covered by federal or state privacy laws, and that they may be able to further share the information that the is given to them

**SECTION VI – How Long This Permission Lasts**
This permission to share my information is good until _____
                                                                                              Indicate date or event
If I do not list a date or event, this permission will last for one year from the date it is signed

- I understand that I can change my mind and cancel this permission at any time   To do this, I need to write a letter to _____, and send it or bring it to the place where I am now giving
                        (Fill in name of person or organization)
  this permission (or fill in specific location)  If the information has already been given out by, I understand that it is too late for me to change my mind and cancel the permission

- I understand that I do not have to give permission to share my information with the person(s) or organization I listed in Section V

- I understand that if I choose not to give this permission or if I cancel my permission, I will still be able to receive any treatment or benefits that I am entitled to, as long as this information is not needed to determine if I am eligible for services or to pay for the services that I receive

---

**SECTION V – Signature**
**Please sign and date this form, and print your name.**


_____        _____
Your Signature                                                       Date


_____
Print Your Name

**If this form is being filled out by someone who has the legal authority to act for you (such as the parent of a minor child, a court appointed guardian or executor, a custodial parent, or a health care agent), please:**

**Print the name of the person filling out this form:** _____

**Signature of the person filling out this form:** _____

**Describe how this person has legal authority for this individual:** _____

---

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF MENTAL HEALTH
Authorization for Release of Information
One-Way From Department of Mental Health

Name:                                          Other Name(s):

Address:                                       Phone:

Social Security #:                             Date of Birth:

I authorize the Department of Mental Health (DMH) to release information to the person, facility or agency named below, either verbally or in writing,

Name:                  Attention:                        Phone:

Street:                City/Town:          State:        Zip:

DMH Contact Information:

Name:                                          Phone:

Address:

The person filling out this form must provide details as to date(s) of requested information Please note that a request for release of psychotherapy notes cannot be combined with any other type of request  Specify information to be released e g  Entire Record, Admission(s) Documentation  Discharge Summary(ies), Transfer Summary(ies), Evaluations, Assessments and Tests, Consultation(s) including names of consultant(s). Treatment Plan(s). ISP(s) & PSTP(s), Physical Exam & Lab Reports, Progress Note(s):

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Purpose for the authorization:
☐ The subject of the information or Personal Representative initiated the authorization (specific purpose not required)
or
☐ Coordinate care          ☐ Facilitate billing
☐ Referral                 ☐ Obtain insurance, financial or other benefits
☐ Other purpose (please specify): _____

A copy of this authorization shall be considered as valid as the original.

DMH Authorization for Release of Information-One Way From DMH          Page 1 of 2
HIPAA-F-3 (4/22/03)

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF MENTAL HEALTH
Authorization for Release of Information (continued)
One-Way From Department of Mental Health

Name of person/facility/agency that DMH is to release information to:_____.

I understand that I have a right to revoke this authorization at any time  If I revoke this authorization, I must do so in writing and present it to DMH at the DMH address identified on page one  I understand that the revocation will not apply to information that has already been released pursuant to this authorization  This authorization will expire in 12 months unless otherwise specified (specify a date, time period or an event):_____  I understand that once the above information is disclosed to a person, facility or agency outside DMH  the recipient may redisclose it and the information may not be protected by federal or state privacy laws or regulations  I understand that authorizing the use or disclosure of the information identified above is voluntary  I need not sign this form to receive treatment or services from DMH  However. lack of ability to share or obtain information may prevent DMH from providing appropriate and necessary care

_____          _____
Your signature or Personal Representative's signature          Date

_____
Print name of signer

THE FOLLOWING INFORMATION IS NEEDED IF SIGNED BY A PERSONAL REPRESENTATIVE

Type of authority (e g  court appointed. custodial parent) _____

Specially Authorized Releases of Information (please initial all that apply)

_____ To the extent that my medical record contains information concerning alcohol or drug treatment that is protected by Federal Regulation 42 CFR, Part 2, I specifically authorize release of such information

_____ To the extent that my medical record contains information concerning HIV antibody and antigen testing that is protected by MGL c 111 §70F, or an HIV/AIDS diagnosis or treatment. I specifically authorize disclosure of such information

_____          _____
Your signature or Personal Representative's signature          Date

INSTRUCTIONS:
1    This form must be completed in full to be considered valid
2    Distribution of copies: original to appropriate DMH record; copy to individual or Personal Representative

# INSTRUCTION AND INFORMATION SHEET FOR
## SF 180, REQUEST PERTAINING TO MILITARY RECORDS

1. **Information needed to locate records.** Certain identifying information is necessary to determine the location of an individual's record of military service. Please try to answer each item on the SF 180. If you do not have and cannot obtain the information for an item, show "NA," meaning the information is "not available." Include as much of the requested information as you can

2. **Restrictions on release of information.** Release of information is subject to restrictions imposed by the military services consistent with Department of Defense regulations and the provisions of the Freedom of Information Act (FOIA) and the Privacy Act of 1974. The service member (either past or present) or the member's legal guardian has access to almost any information contained in that member's own record. An authorization signature, of the service member or the member's legal guardian, is needed in Section III of the SF180. Others requesting information from military personnel/health records must have the release authorization in Section III of the SF 180 signed by the member or legal guardian, but if the appropriate signature cannot be obtained, only limited types of information can be provided. If the former member is deceased, surviving next of kin may, under certain circumstances, be entitled to greater access to a deceased veteran's records than a member of the public. The next of kin may be any of the following: unremarried surviving spouse, father, mother, son, daughter, sister, or brother. Employers and others needing proof of military service are expected to accept the information shown on documents issued by the military service departments at the time a service member is separated

3. **Where reply may be sent.** The reply may be sent to the member or any other address designated by the member or other authorized requester

4. **Charges for service.** There is no charge for most services provided to members or their surviving next of kin. A nominal fee is charged for certain types of service. In most instances service fees cannot be determined in advance. If your request involves a service fee, you will be notified as soon as that determination is made

5. **Health and personnel records.** Health records of persons on active duty are generally kept at the local servicing clinic, and usually are available from the Department of Veterans Affairs a week or two after the last day of active duty. (See page 2 of SF180 for record locations/addresses )

6. **Records at the National Personnel Records Center.** Note that it takes at least three months, and often up to seven, for the file to reach the National Personnel Records Center in St Louis after the military obligation has ended (such as by discharge). If only a short time has passed, please send the inquiry to the address shown for active or current reserve members. Also, if the person has only been released from active duty but is still in a reserve status, the personnel record will stay at the location specified for reservists. A person can retain a reserve obligation for several years, even without attending meetings or receiving annual training. (See page 2 of SF180 for record locations/addresses )

7. **Definitions and abbreviations.** DISCHARGED -- the individual has no current military status; HEALTH -- Records of physical examinations, dental treatment, and outpatient medical treatment received while in a duty status (does not include records of treatment while hospitalized); TDRL -- Temporary Disability Retired List

8. **Service completed before World War I.** National Archives Trust Fund (NATF) forms must be used to request these records. Obtain the forms by e-mail from *inquire@nara gov* or write to the Code 6 address on page 2 of the SF 180

## PRIVACY ACT OF 1974 COMPLIANCE INFORMATION

The following information is provided in accordance with 5 U S C 552a(e)(3) and applies to this form. Authority for collection of the information is 44 U S C 2907, 3101, and 3103, and Public Law 104-134 (April 26, 1996), as amended in title 31, section 7701. Disclosure of the information is voluntary. If the requested information is not provided, it may delay servicing your inquiry because the facility servicing the service member's record may not have all of the information needed to locate it. The purpose of the information on this form is to assist the facility servicing the records (see the address list) in locating the correct military service record(s) or information to answer your inquiry. This form is then filed in the requested military service record as a record of disclosure. The form may also be disclosed to Department of Defense components, the Department of Veterans Affairs, the Department of Homeland Security (DHS, U S Coast Guard), or the National Archives and Records Administration when the original custodian of the military health and personnel records transfers all or part of those records to that agency. If the service member was a member of the National Guard, the form may also be disclosed to the Adjutant General of the appropriate state, District of Columbia, or Puerto Rico, where he or she served

## PAPERWORK REDUCTION ACT PUBLIC BURDEN STATEMENT

Public burden reporting for this collection of information is estimated to be five minutes per response, including time for reviewing instructions and completing and reviewing the collection of information. Send comments regarding the burden estimate or any other aspect of the collection of information, including suggestions for reducing this burden, to National Archives and Records Administration (NHP), 8601 Adelphi Road, College Park, MD 20740-6001. DO NOT SEND COMPLETED FORMS TO THIS ADDRESS. SEND COMPLETED FORMS AS INDICATED IN THE ADDRESS LIST ON PAGE 2 OF THE SF 180.

Standard Form 180 (Rev. 4-07) (Page 1)
Prescribed by NARA (36 CFR 1228.168(b))

Authorized for local reproduction
Previous edition unusable

OMB No. 3095-0029 Expires 9/30/2008

## REQUEST PERTAINING TO MILITARY RECORDS

To ensure the best possible service, please thoroughly review the accompanying instructions before filling out this form  Please print clearly or type.  If you need more space, use plain paper.

### SECTION I - INFORMATION NEEDED TO LOCATE RECORDS (Furnish as much as possible.)

| 1  NAME USED DURING SERVICE (last, first, and middle) | 2  SOCIAL SECURITY NO | 3  DATE OF BIRTH | 4  PLACE OF BIRTH |
|---|---|---|---|
| | | | |

5  SERVICE , PAST AND PRESENT    (For an effective records search, it is important that all service be shown below )

| | | DATES OF SERVICE | | CHECK ONE | | SERVICE NUMBER DURING THIS PERIOD (If unknown, write "unknown") |
|---|---|---|---|---|---|---|
| | BRANCH OF SERVICE | DATE ENTERED | DATE RELEASED | OFFICER | ENLISTED | |
| a ACTIVE SERVICE | | | | | | |
| b RESERVE SERVICE | | | | | | |
| c. NATIONAL GUARD | | | | | | |

6  IS THIS PERSON DECEASED?  If "YES" enter  the date of death    ☐ NO    ☐ YES

7  IS (WAS) THIS PERSON  RETIRED FROM MILITARY SERVICE?    ☐ NO    ☐ YES

### SECTION II – INFORMATION AND/OR DOCUMENTS REQUESTED

1.  REPORT OF SEPARATION (DD Form 214 or equivalent)  This contains information normally needed to verify military service  A copy may be sent to the veteran, the deceased veteran's next of kin, or other persons or organizations if authorized in Section III, below  NOTE: If more than one period of service was performed, even in the same branch, there may be more than one Report of Separation  Be sure to show EACH year that a Report of Separation was issued, for which you need a copy

☐  An UNDELETED Report of Separation is requested for the year(s) _____

This normally will be a copy of the full separation document including such sensitive items as the character of separation, authority for separation, reason for separation, reenlistment eligibility code, separation (SPD/SPN) code, and dates of time lost  An undeleted version is ordinarily required to determine eligibility for benefits

☐  A DELETED Report of Separation is requested for the year(s) _____

The following information will be deleted from the copy sent: authority for separation, reason for separation, reenlistment eligibility code, separation(SPD/SPN) code, and for separations after June 30, 1979, character of separation and dates of time lost

2  OTHER INFORMATION AND/OR DOCUMENTS REQUESTED _____

3.  PURPOSE (Optional – An explanation of the purpose of the request is strictly voluntary  Such information may help the agency answering this request to provide the best possible response and will in no way be used to make a decision to deny the request ) _____

### SECTION III - RETURN ADDRESS AND SIGNATURE

1.  REQUESTER IS:

☐  Military service member or veteran identified in Section I. above

☐  Next of kin of deceased veteran _____ (relation)

☐  Legal guardian (must submit copy of court appointment)

☐  Other (specify) _____

2  SEND INFORMATION/DOCUMENTS TO:
(Please print or type  See item 3 on accompanying instructions )

3.  AUTHORIZATION SIGNATURE REQUIRED (See item 2 on accompanying instructions )  I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the information in this Section III is true and correct

Name _____

Signature    (Please do not print ) _____

Street _____ Apt ____

Date of this request _____  Daytime phone (   ) _____

City _____  State ____  Zip Code ____

Email address _____

** This form is available at *http://www.archives.gov/research/order/standard-form-180.pdf* on the National Archives and Records Administration (NARA) web site **

Standard Form 180 (Rev 4-07)  (Page 2)
Prescribed by NARA (36 CFR 1228.168(b))

Authorized for local reproduction
Previous edition unusable

OMB No. 3095-0029 Expires 9/30/2008

## LOCATION OF MILITARY RECORDS

The various categories of military service records are described in the chart below  For each category there is a code number which indicates the address at the bottom of the page to which this request should be sent  Please refer to the Instruction and Information Sheet accompanying this form as needed

| BRANCH | CURRENT STATUS OF SERVICE MEMBER | ADDRESS CODE | |
| | | Personnel Record | Health Record |
|---|---|---|---|
| AIR FORCE | Discharged, deceased, or retired before 5/1/1994 | 14 | 14 |
| | Discharged, deceased, or retired 5/1/1994 – 9/30/2004 | 14 | 11 |
| | Discharged, deceased, or retired on or after 10/1/2004 | 1 | 11 |
| | Active (including National Guard on active duty in the Air Force), TDRL, or general officers retired with pay | 1 | |
| | Reserve, retired reserve in nonpay status. current National Guard officers not on active duty in the Air Force, or National Guard released from active duty in the Air Force | 2 | |
| | Current National Guard enlisted not on active duty in the Air Force | 13 | |
| COAST GUARD | Discharge , deceased, or retired before 1/1/1898 | 6 | |
| | Discharged, deceased, or retired 1/1/1898 – 3/31/1998 | 14 | 14 |
| | Discharged, deceased, or retired on or after 4/1/1998 | 14 | 11 |
| | Active, reserve, or TDRL | 3 | |
| MARINE CORPS | Discharged, deceased, or retired before 1/1/1905 | 6 | |
| | Discharged, deceased, or retired 1/1/1905 – 4/30/1994 | 14 | 14 |
| | Discharged, deceased, or retired 5/1/1994 – 12/31/1998 | 14 | 11 |
| | Discharged, deceased, or retired on or after 1/1/1999 | 4 | 11 |
| | Individual Ready Reserve or Fleet Marine Corps Reserve | 5 | |
| | Active, Selected Marine Corps Reserve, TDRL | 4 | |
| ARMY | Discharged, deceased, or retired 11/1/1912 (enlisted) or before 7/1/1917 (officer) | 6 | |
| | Discharged, deceased, or retired 11/1/1912 – 10/15/1992 (enlisted) or 7/1/1917 – 10/15/1992 (officer) | 14 | 14 |
| | Discharged, deceased, or retired 10/16/1992 – 9/30/2002 | 14 | 11 |
| | Discharged, deceased, or retired on or after 10/1/2002 | 7 | 11 |
| | Reserve; or active duty records of current National Guard members who performed service in the U S Army before 7/1/1972 | 7 | |
| | Active enlisted (including National Guard on active duty in the U.S. Army) or TDRL enlisted | 9 | |
| | Active officers (including National Guard on active duty in the U.S. Army) or TDRL officers | 8 | |
| | Current National Guard enlisted not on active duty in Army (including records of Army active duty performed after 6/30/1972) | 13 | |
| | Current National Guard officers not on active duty in Army (including records of Army active duty performed after 6/30/1972) | 12 | |
| NAVY | Discharged, deceased, or retired before 1/1/1886 (enlisted) or before 1/1/1903 (officer) | 6 | |
| | Discharged, deceased, or retired 1/1/1886 – 1/30/1994 (enlisted) or 1/1/1903 – 1/30/1994 (officer) | 14 | 14 |
| | Discharged, deceased, or retired 1/31/1994 – 12/31/1994 | 14 | 11 |
| | Discharged, deceased, or retired on or after 1/1/1995 | 10 | 11 |
| | Active, reserve, or TDRL | 10 | |
| PHS | Public Health Service - Commissioned Corps officers only | 15 | |

### ADDRESS LIST OF CUSTODIANS (BY CODE NUMBERS SHOWN ABOVE) – Where to write/send this form

| | | | | | |
|---|---|---|---|---|---|
| 1 | Air Force Personnel Center HQ AFPC/DPSRP 550 C Street West, Suite 19 Randolph AFB, TX 78150-4721 | 6 | National Archives & Records Administration Old Military and Civil Records (NWCTB-Military) Textual Services Division 700 Pennsylvania Ave., N.W. Washington, DC 20408-0001 | 11 | Department of Veterans Affairs Records Management Center P.O. Box 5020 St. Louis, MO 63115-5020 |
| 2 | Air Reserve Personnel Center /DSMR HQ ARPC/DPSSA/B 6760 E. Irvington Place, Suite 4600 Denver, CO 80280-4600 | 7 | U.S. Army Human Resources Command ATTN: AHRC-PAV-V 1 Reserve Way St. Louis, MO 63132-5200 | 12 | Army National Guard Readiness Center NGB-ARP 111 S George Mason Dr. Arlington, VA 22204-1382 |
| 3 | Commander, CGPC-adm-3 USCG Personnel Command 4200 Wilson Blvd , Suite 1100 Arlington, VA 22203-1804 | 8 | U.S. Army Human Resources Command ATTN: AHRC-MSR 200 Stovall Street Alexandria, VA 22332-0444 | 13 | The Adjutant General (of the appropriate state, DC, or Puerto Rico) |
| 4 | Headquarters U.S. Marine Corps Personnel Management Support Branch (MMSB-10) 2008 Elliot Road Quantico, VA 22134-5030 | 9 | Commander USAEREC ATTN: PCRE-F 8899 E 56th St Indianapolis, IN 46249-5301 | 14 | National Personnel Records Center (Military Personnel Records) 9700 Page Ave St Louis, MO 63132-5100 |
| 5 | Marine Corps Reserve Support Command (Code MMI) 15303 Andrews Road Kansas City, MO 64147-1207 | 10 | Navy Personnel Command (PERS-312) 5720 Integrity Drive Millington, TN 38055-3130 | 15 | Division of Commissioned Corps Officer Support ATTN: Records Officer 1101 Wooton Parkway, Plaza 1 Level, Suite 100 Rockville, MD 20852 |